**Paul Michael ADAMS and Joanne Adams, Appellants (Plaintiff below),**

v.

**J. Theodore LUROS, Appellee (Defendant below).**

**No. 1–1179–A–311.**

Court of Appeals of Indiana, First District.

July 7, 1980.

Rehearing Denied Aug. 13, 1980.

Phillip A. Sallee, Bloomington, for appellants.

Gary J. Clendening, Joseph D. O'Connor, III, Bunger, Harrell & Robertson, Bloomington, for appellee.

ROBERTSON, Presiding Judge.

This is a medical malpractice case. The facts, most favorable to the appellant, are that the plaintiff-appellant, Paul Michael Adams (Adams), first saw the defendant-appellee, Dr. J. Theodore Luros (Dr. Luros), in January 1973 for lower back pain, partial paralysis of his right leg and "toe drop". Dr. Luros had been recommended by Adams's personal physician. Dr. Luros had Adams admitted twice to a hospital in Indianapolis and conducted extensive tests, but could not diagnose the problem. Adams contends that Dr. Luros told him to "live

with it" until it got better or worse and Adams inferred he should come back if the condition worsened. This was in July of 1973. In 1976, Adams started experiencing difficulty with the leg beyond the problems he had earlier. Eventually, in 1977, after consulting other physicians, the problem was diagnosed as a tumor in the middle region of Adams's spinal cord. The tumor was removed by surgery on March 17, 1977, but Adams was left without the use of his legs. Adams brought suit on February 26, 1979, contending that Dr. Luros failed to have ordered a myelogram made in the critical area and that such a failure constituted malpractice.

Default judgment was entered against Dr. Luros; however, the default was set aside and Dr. Luros's motion for summary judgment based on the statute of limitations was granted. Adams appeals the granting of both motions.

■ We first consider whether it was reversible error to set aside the default judgment. It is well settled that the standard of review is whether the trial court abused its discretion. *Pounds v. Pharr,* (1978) Ind.App., 376 N.E.2d 1193; *Fitzgerald v. Brown,* (1976) Ind.App., 344 N.E.2d 309; *Cazarus v. Blevins,* (1974) 159 Ind.App. 512, 308 N.E.2d 412. The record shows that Dr. Luros had received the summons and complaint, but he had also received a letter from the Patient's Compensation Authority. The letter suggested that the cause of action was proceeding under the new Malpractice Act, which, of course, requires a Review Panel determination before a lawsuit can proceed. The trial court could have reasonably found that the doctor was misled by this letter into thinking that the lawsuit was not proceeding, when in fact, it was. We find no abuse of discretion here.

Case law states that the motion to set aside a default judgment must further show the movant had a good and meritorious defense. *Fitzgerald, supra.* Here, Dr. Luros claimed the defense of the statute of limitations. Adams complains that such a defense does not go to the merits of the case and, as a a matter of equity, he should not be allowed to raise it. We find no authority for such a novel proposition and, thus, reject it.

■ The summary judgment was granted because of the affirmative defense of the statute of limitations. The trial court apparently was of the opinion that the new Medical Malpractice Act statute of limitations applies. We disagree. Ind. Code 16–9.5–1–7 states that the provisions of the Medical Malpractice Act do not apply to any act of malpractice which occurred before July 1, 1975. The statute is alleged to have been tolled by fraudulent concealment past the July 1, 1975 date; however, we think the former statute of limitations still applies.[1]

■ We make one more point in this regard concerning the theory of fraudulent concealment raised by Adams. Dr. Luros presents at first glance an interesting argument that, because Adams did not raise the theory in his complaint or by reply, Adams is prohibited from doing so now. Dr. Luros cites Ind. Rules of Procedure, Trial Rule 9(C) which states all averments of fraud shall be specifically pleaded. Apparently, under former rules of pleading, the allegation of fraud which would toll the statute of limitations would be raised by reply. *See Guy v. Schuldt,* (1956) 236 Ind. 101, 138 N.E.2d 891. Our modern rules of pleading, however, discourage replies. T.R. 7(A)(5) states, "Matters formerly required to be pleaded by a reply or other subsequent

---

1. IC 16–9.5–3–2 does state that notwithstanding IC 16–9.5–1–7 any claim "by a minor or other person under legal disability" against a doctor or other health-care provider must be made within either the date set by the new statute of limitations or two years of the effective date of the new article, whichever comes last. The trial court, in its opinion, implies that Adams's allegation of fraudulent concealment of the malpractice (which is alleged to be the failure to tell Adams that only a partial myelogram was taken), which tolls the statute of limitations is a "legal disability". We disagree with this analysis. Legal disability has a specific meaning in the law and the raising of equitable estoppel to toll a statute of limitations is not one of them. Thus, IC 34–4–19–1 applies in this case.

pleading may be proved even though they are not pleaded." W. Harvey, Indiana Practice, § 7.7 (1969), states,

> A reply to a counterclaim should not include denials or allegations relating to other matters in the answer without a court order. And without such an order, a reply is not justified to special defenses listed in Rule 9. Thus, without a reply, plaintiff may defeat a defense of the statute of limitations by facts showing equitable estoppel.

We, thus, reject this argument.

The trial court, in its opinion, set forth two alternative grounds for entering summary judgment. First, the trial court found, as a matter of law, that the physician-patient relationship had ended more than two years prior to the filing of this lawsuit. The result of this finding by the trial court is that Adams is barred by the statute of limitations, regardless of the possible tolling of the statute of limitations by fraudulent concealment. The trial court correctly stated the law, but we determine that there is a factual controversy as to when the physician-patient relationship ended.

 *Guy v. Schuldt*, (1956) 236 Ind. 101, 138 N.E.2d 891 is the leading case on the applicability of the doctrine of fraudulent concealment to the statute of limitations for malpractice under consideration here. *Guy* held that fraudulent concealment of the malpractice by the physician tolls the statute of limitations. While the general rule is that the fraud must be an affirmative act which amounts to more than passive silence, *French v. Hickman Moving & Storage*, (1980) Ind.App., 400 N.E.2d 1384, 1389, *Guy* also held, because of the fiduciary nature of the physician-pa-

tient relationship, that the physician has a duty to disclose material information to the patient and a failure to do so results in a fraudulent concealment. Of course, the natural corollary to this rule is that when the relationship ends, the duty to disclose ends and the fraudulent concealment by silence ends, as stated by *Guy, supra* at 109, 138 N.E.2d at 895:[2]

> But where the duty to inform exists by reason of a confidential relationship, when that relationship is terminated the duty to inform is also terminated; concealment then ceases to exist. After the relationship of physician and patient is terminated the patient has full opportunity for discovery and no longer is there a reliance by the patient nor a corresponding duty of the physician to advise or inform. The statute of limitations is no longer tolled by any fraudulent concealment and begins to run.

The trial court found, as a matter of law, that the physician-patient relationship here terminated some time prior to two years before the filing of this lawsuit. The trial court relied on the fact that Adams had not visited or been treated by Dr. Luros for more than five years before the filing of the lawsuit. The trial court discounted Adams's allegation that he still considered Dr. Luros to be his neurosurgeon and that Adams still carried the business card of Dr. Luros in his wallet.

Our standard of review in a summary judgment case is that it is appropriate where there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. T.R. 56(C).

2. *Guy* carefully distinguished fraudulent concealment based on a failure to disclose from concealment based on an affirmative act. We are concerned here only with the alleged failure by Dr. Luros to disclose that he had not ordered a complete myelogram taken. *Compare van Bronckhorst v. Taube*, (1976) Ind.App., 341 N.E.2d 791. We question the concurring opinion in *Toth v. Lenk*, (1975) 164 Ind.App. 618, 330 N.E.2d 336, which apparently blurs this distinction. The *Toth* concurrence focused on the last opportunity to misrepresent, whereas *Guy* focused, in a failure to disclose situation, on the relationship that creates the duty. We feel, under *Guy* that it is theoretically possible that a duty to disclose continues, as long as there is a physician-patient relationship, even though there may not be an actual consultation for a period of time. In short, we do not think the relationship *necessarily*, as a matter of law, ends at the last consultation.

In a motion for summary judgment, the burden is upon the moving party to establish that no material facts are in genuine issue and any doubt to the existence of a genuine issue of a material fact must be resolved against the moving party. *Hale v. Peabody Coal Co.*, (1976) Ind.App., 343 N.E.2d 316. Thus, for purposes of determining whether to grant the motion, the facts set forth in the non-moving party's affidavits are taken as true, and the products of discovery are liberally construed in his favor. *Hale, supra.* Also, even if the facts are not in dispute, summary judgment is not appropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Hale, supra.*

There are many factors that enter into the analysis of determining when a physician-patient relationship ends. The subjective views of parties are important and a consideration must be given to objective factors, including, but not limited to, the frequency of visits, whether a course of treatment was prescribed by the doctor (to be followed with or without consultation), the nature of the illness, the nature of the physician's practice and whether the patient began consulting other physicians for the same malady.

Under the standard recited above, we cannot agree with the trial court and say, as a matter of law, that the physician-patient relationship ended here more than two years prior to the filing of the lawsuit. Adams alleges that Dr. Luros told him that he had to live with the problem until it got better or worse. Adams states that he took that to mean that he should contact Dr. Luros when the problem got worse. The problem did stabilize until May of 1977 when Adams had difficulties with the leg again. He was advised by his personal physician that the problem was pulled ligaments which he thought was unrelated to the previous problem. Adams claims that if the old problem had gotten worse he would have contacted his specialist, Dr. Luros, who had his records.

We realize, as the trial court did, that there is much persuasive evidence in the record that indicates a termination of the relationship more than two years prior to the filing of the lawsuit. However, "summary judgment is not a procedure for trying facts and determining the preponderance of the evidence. Rather, it is a procedure for applying the law to the facts when no factual controversy exists." *Central Realty, Inc. v. Hillman Equipment, Inc.*, (1969) 253 Ind. 48, 57, 246 N.E.2d 383, 389.

The alternative ground for granting the summary judgment by the trial court is that even assuming that the patient-physician relationship still existed, Adams became aware of the fraudulent concealment more than two years before the lawsuit was filed. It is settled that when the patient learns of the malpractice or learns information which would lead to discovery of the malpractice through diligence, the statute commences to run, regardless of the concealment. *Toth v. Link*, (1975) 164 Ind. App. 618, 330 N.E.2d 336.

The trial court found, as a matter of law, that in January of 1977, Adams possessed the information that would have reasonably led him through diligent effort to the discovery of the malpractice. Specifically, the trial court pointed to Adams's testimony in his deposition that, in January of 1977, Adams's new doctor allegedly told him there were no X-rays of the critical area taken by Dr. Luros.

We, again, think there is a factual controversy as to exactly when Adams, as a reasonable person, had sufficient knowledge to know that the malpractice had occurred. The fact that, in January of 1977, Adams knew or should have known that a complete myelogram was not taken does not mean, as a matter of law, that Adams had sufficient knowledge to deduce that malpractice had taken place.

This determination of whether and when Adams had sufficient knowledge to discern that malpractice occurred involves questions of state of mind and what is reasonable and diligent. These are questions that generally are not appropriate for summary

judgment. *See e. g., Wozniczka v. McKean,* (1969) 144 Ind.App. 471, 498, 247 N.E.2d 215, 229.

Reversed and remanded for further proceedings not inconsistent with this opinion.

NEAL and RATLIFF, JJ., concur.