Bonnie J. COLBERT and Oscar Colbert, Appellants (Defendants Below),

v.

Paul WAITT, M.D. and Joe R. Lloyd, M.D., Appellees (Plaintiffs Below).

No. 4-182A1.

Court of Appeals of Indiana, Fourth District.

June 28, 1982.

Morris L. Klapper, Indianapolis, for appellants.

John P. Price, Robert J. Shula, Gregory D. Sumner, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellee, Paul Waitt, M.D.

Joe Tipton, Edna M. Koch, Indianapolis, for appellee, Joe R. Lloyd, M.D.

## MEMORANDUM DECISION

YOUNG, Judge.

Bonnie Colbert and Oscar Colbert, her husband, appeal from a summary judgment granted in favor of Dr. Paul Waitt and Dr. Joe Lloyd in a medical malpractice action. On appeal they argue that the statute of limitations should be construed as a discovery rule rather than an occurrence rule and that a genuine issue of material fact existed as to whether the running of the statute of limitations was tolled by the doctrine of constructive fraudulent concealment.

We affirm.

In late December 1977 and January of 1978, Bonnie Colbert sought medical treatment from Dr. Waitt as well as Dr. Lloyd. On January 20, 1978, the doctors performed a hysterectomy on Mrs. Colbert at Riverview Hospital. Following this surgery, Mrs. Colbert had several complications and improved only briefly. On March 1, 1978, two of her renal function studies showed abnormal findings. Because she and her family were unhappy with her lack of progress, they decided to have her transferred to the Indiana University Medical Center to Dr. Madura's care. Dr. Madura had earlier performed a small bowel bypass surgery on her. The last time either Dr. Waitt or Dr. Lloyd saw Mrs. Colbert was on March 4, 1978 when she was transferred to Dr. Madura's care at the Medical Center. On March 10, 1978, Dr. Madura performed additional surgery on Mrs. Colbert to remove pus underneath her liver which was caused by a large infection developing after her January 1978 surgery. At the Medical Center Mrs. Colbert also underwent tests for her kidneys, lungs, and heart. She learned that things were not exactly as they should be and that crystalization was forming in her kidneys. She was given medication for her kidneys and a kidney specialist was consulted. Nevertheless, she did not feel the doctors were concerned about her kidneys although they did have a kidney machine nearby in case she needed it following the March 10th surgery. Interns suggested that the kidney problems were a result of the infection which developed after the hysterectomy surgery. On April 4, 1978, Mrs. Colbert was released. However, in October 1978, she learned that she had acute and chronic renal failure. She did

not learn the exact cause of this problem until some time later. On September 23, 1980, Oscar and Bonnie Colbert filed a proposed complaint with the insurance commission alleging that Dr. Waitt and Dr. Lloyd were negligent in their medical treatment of her. Pursuant to Ind.Code 16–9.5–10–1 each party thereafter filed a motion with the court for preliminary determination of the law on the issue of the statute of limitations defense. After the trial court considered the affidavits and Mrs. Colbert's published deposition, the court entered summary judgment[1] in favor of the doctors on this issue.

 The alleged malpractice in this case occurred in January 1978. The applicable limiting statute is I.C. 16–9.5–3–1:

> No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or which should have been rendered unless filed within two [2] years from the date of the alleged act, omission or neglect . . . .

The language of the statute is not ambiguous in stating that it is an occurrence rule rather than a discovery rule. *Alwood v. Davis,* (1980) Ind.App., 411 N.E.2d 759 (discussing I.C. 34–4–19–1, the prior medical malpractice limiting statute with very similar language). Like the earlier malpractice act it does not say "within two years from the date of discovery of the act, omission or neglect complained of." *Id.* We cannot reasonably construe the language used as a discovery rule. *Alwood, supra. See also Carrow v. Streeter,* (1980) Ind.App., 410 N.E.2d 1369. The two year period begins to run from the date of the act, omission or neglect complained of.[2]

The Colberts also contend that genuine issues of material fact exist regarding the running of the statute of limitations, specifically whether the doctrine of constructive fraudulent concealment tolled the running of the statute of limitations until two years before their suit was filed. The Colberts claim the physician-patient relationship did not terminate until October 1978, the day she learned of her complete renal failure. Moreover, Mrs. Colbert argues she did not learn and could not have learned of the doctors' malpractice until the time she later learned the doctors' treatment caused her renal failure. Dr. Waitt argues that his physician-patient relationship ended after surgery was performed and she was transferred to the Medical Center under Dr. Madura's care on March 3, 1978. Dr. Lloyd counters that the doctrine of constructive fraudulent concealment no longer exists and, even assuming it does, his physician-patient relationship had also terminated on March 3, 1978. Furthermore, Mrs. Colbert knew or should have known that the alleged malpractice occurred more than two years prior to filing her complaint; thus summary judgment was proper.

 Before we address whether summary judgment was properly entered, we note that the doctrine of fraudulent concealment is as applicable to the statute of limitations defense under I.C. 16–9.5–3–1 as it was to the statute of limitation defense based upon the former medical malpractice act.[3] See, *Guy v. Schuldt,* (1956) 236 Ind. 101, 138 N.E.2d 891. This doctrine is not based upon a construction of the statute. Rather, the doctrine is predicated on the principle of estoppel that one who by deception or any violation of duty towards the plaintiff, conceals material facts and thereby prevents the discovery of the wrong, should not be permitted to take advantage of his own deceit or concealment by asserting the statute of limitations.

---

1. Because the court considered affidavits and a deposition the motions are treated as motions for summary judgment. *Carrell v. Ellingwood,* (1982) Ind.App., 423 N.E.2d 630.

2. The constitutionality of this limiting statute, as applied to patients unaware of the existence of their cause of action against a professional included within the statute, was not raised in the motion to correct errors. Therefore, we are prevented from discussing this question. Ind. Rules of Procedure, A.R. 8.3(A)(7). We also note that this case is not one where the plaintiff could not have known of her claim within the two year period.

3. The former statute of limitations was found at I.C. 34–4–19–1.

*Guy, supra.* The doctrine is not an "exception" to the rule of our malpractice limitation statute, but constitutes an equitable estoppel which precludes certain defendants from asserting the statutory bar. *Bronckhorst v. Taube,* (1976) 168 Ind.App. 132, 341 N.E.2d 791. Before the doctrine of estoppel may be used to bar the defendant's use of the statute of limitations, the fraud must be of such character as to prevent inquiry, or to elude investigation, or to mislead the party who claims the cause of action. *Guy, supra* 138 N.E.2d at 894.

■■■ Two types of conduct by a physician can invoke this equitable doctrine to toll the statute of limitations. *Carrow, supra* at 1374. The fraud may be active because of some affirmative effort to conceal the cause of action[4], or the fraud may be passive because of the existence of an affirmative duty to disclose material information resulting from a fiduciary or confidential relationship, such as the physician-patient relationship. *Id.* Where the duty to inform exists by reason of a confidential relationship the duty to inform is terminated when that relationship is terminated. *Guy, supra,* 138 N.E.2d at 895. Concealment then ceases to exist because the patient then has full opportunity for discovery and there is no longer reliance by the patient nor a corresponding duty of the physician to advise or inform. *Id.* The statute of limitations begins to run.[5]

The trial court granted summary judgment, finding, as a matter of law, that both doctors' physician-patient relationships had terminated more than two years before the filing of this lawsuit. In reviewing this decision, we recognize that summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, disclose that no genuine issues as to any material fact exists and that the moving party is entitled to judg-

ment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C); *Carrow, supra* at 1373. Summary judgment is improper if different inferences can be drawn from undisputed facts. *Carrow, supra* at 1373. To be considered genuine for summary judgment purposes a material issue of fact must be established by sufficient evidence supporting the claimed factual dispute to require a judge or jury to resolve the parties' differing versions of the truth at trial, *Stuteville v. Downing,* (1979) Ind.App., 391 N.E.2d 629, although the facts established by the party opposing the motion must be taken as true and all doubts must be resolved against the proponent. *Boswell v. Lyon,* (1980) Ind.App., 401 N.E.2d 735. Moreover, the products of discovery are liberally construed in the opposing party's favor. *Adams v. Luros,* (1980) Ind.App., 406 N.E.2d 1199.

■■■ Under our standard of review, we find the trial court properly granted the summary judgment in favor of both doctors. The information before the court did not reveal a factual dispute concerning when the physician-patient relationships terminated which would prevent the statute from running and preclude an entry of summary judgment.

There are many factors that enter into the analysis of determining when a physician-patient relationship ends. The subjective views of parties are important and consideration must be given to objective factors, including, but not limited to, the frequency of visits, whether a course of treatment was prescribed by the doctor (to be followed with or without consultation), the nature of the illness, the nature of the physician's practice and whether the patient began consulting other physicians for the same malady.

*Adams, supra* at 1203.

No information before the court suggests that Dr. Waitt's relationship as Mrs. Col-

---

4. The Colberts do not contend the doctors participated in an active fraud; thus we do not discuss this type beyond our recognition of it.

5. If the patient learns of the malpractice or learns information which would lead to discovery of it, had the patient exercised diligence

to discover it, the running of the statute also commences. The knowledge of the condition or "injury" rather than its reason destroys the estoppel. See, *Toth v. Lenk,* (1975) 164 Ind. App. 618, 330 N.E.2d 336.

bert's doctor continued beyond March 4, 1978. Mrs. Colbert's affidavit states that she was in his care until March 4, 1978 when she was discharged from Riverview Hospital and transferred to the Medical Center. Mrs. Colbert testified in her deposition that her family sought the transfer because they were unhappy with her progress under Dr. Waitt's and Dr. Lloyd's care at Riverview. Her deposition further revealed that at the time of her transfer on March 4, 1978 she did not consider Dr. Waitt to be her doctor anymore. Dr. Waitt did not see Mrs. Colbert again after March 4, 1978 and he did not prescribe a course of treatment. The only inference to be drawn from this information is that the physician-patient relationship between Dr. Waitt and Mrs. Colbert did not extend beyond March 4, 1978. The statute began to run from that date. Therefore, the trial court did not err in finding, as a matter of law, this physician-patient relationship terminated prior to two years before September 23, 1980 when she filed suit. The summary judgment entry for Dr. Waitt was proper because there was no relationship to toll the statute; therefore, the statutory time period to file the suit had run.

■ Moreover, the summary judgment in favor of Dr. Lloyd was also proper. Although Mrs. Colbert's affidavit states that Dr. Lloyd was her family physician until October 10, 1978 when she learned of her renal failure, the other statements in her affidavit and her testimony in her deposition indicate that after March 4, 1978 she no longer relied on Dr. Lloyd for any treatment concerning the surgery or post-surgery problems because she was turned over to Dr. Madura. She testified that she did not see Dr. Lloyd after surgery nor did she contact him. After she was released from the Medical Center, she continued to see Dr. Madura once a month. When she had severe vomiting problems in October 1978 she contacted Dr. Madura who called in a kidney specialist. At that time, she learned of her complete renal failure.

This information could not support a conclusion that the physician-patient relationship continued for the purpose of tolling the statute under the estoppel doctrine of constructive fraudulent concealment. As we noted earlier in this opinion, to invoke this doctrine, the fraud must be of such character to prevent injury, or to elude investigation or to mislead the party who claims the cause of action. *Guy, supra.* Here the only factual allegation, which might support an extension of the relationship, is that Mrs. Colbert considered Dr. Lloyd to be her family doctor until October 1978. However, she made it clear that she did not consider him her doctor for these problems she had incurred. She was under Dr. Madura's care and thus had a full opportunity for discovery of any malpractice. There was no reliance by her on any course of treatment prescribed by Dr. Lloyd nor did she ever contact him or consider contacting him as was disclosed by her choice of doctor when she developed severe vomiting problems. No relationship was suggested by the information before the court which would have placed Dr. Lloyd in a confidential relationship whereby he could have prevented inquiry, eluded investigation, or misled the Colberts.

This case is unlike the cases presented in *Adams, supra* or *Carrow, supra.* In each of those cases the patient relied on the advice of their doctor either in continuing to use a prescription or in accepting the doctor's comment that the patient's problem was something he had to accept until it got worse or better. Dr. Lloyd, however, took no part in and made no comments on her continued treatment. Rather, the responsibility for her treatment was undertaken by Dr. Madura. The evidence establishes a complete lack of reliance by Mrs. Colbert and lack of opportunity by Dr. Lloyd for concealment. Therefore, the court properly determined that no physician-patient relationship existed which would toll the statute. The complaint was filed beyond the time period allowed; therefore, summary judgment was proper.

Affirmed.

MILLER, P.J., and CONOVER, J., concur.