Paul SPOLJARIC, Bruce Spoljaric, Individually and as Husband and Wife; Kimberly, Philip & Heather Spoljaric, all Minors b/n/f Bruce Spoljaric, Appellants (Plaintiff-Petitioners below)

v.

Zanita PANGAN, M.D., Bernard Poracky, M.D., M.O. Sacris, M.D. and Porter Memorial Hospital, Appellees (Defendant-Respondents below)

No. 3–583A129.

Court of Appeals of Indiana, Third District.

July 10, 1984.

Stephen B. Caplin, Indianapolis, Jeffrey D. Salberg, Lasser, Salberg & Ruff, Merrillville, for appellants.

David C. Jensen, Maureen Johns Grimmer, Eichhorn, Eichhorn & Link, Hammond, for appellees.

GARRARD, Judge.

Paul and Bruce Spoljaric and their children, Kimberly, Philip and Heather (the Spoljarics) appeal the trial court's grant of summary judgment in favor of Doctors Zanita Pangan, Bernard Poracky and M.O. Sacris (the doctors) and the Porter Memorial Hospital (the hospital).

The doctors and the hospital are health care providers under the Indiana Medical

Malpractice Act (the Act), IC 16–9.5–1–1 *et seq.* On June 9, 1981, the Spoljarics filed their proposed complaint pursuant to the terms of the Act. Subsequently, the doctors and the hospital filed motions for preliminary determinations seeking the dismissal of the complaint on the ground that there was no cause of action recognizable in Indiana for the wrongful birth of a normal child or on the alternative ground that the complaint was barred by the running of the applicable two-year statute of limitations.[1]

The trial court, considering Paula Spoljaric's answers to interrogatories, entered summary judgment[2] in favor of the doctors and the hospital holding that there was a valid statute of limitations defense and that "an action for wrongful birth or for wrongful conception is not a recognizable cause of action" in the State of Indiana.

The Spoljarics raise four issues on appeal:

    I.  Whether it was necessary for them to affirmatively plead fraudulent concealment in a reply to the affirmative defense of the statute of limitations.

   II.  Whether there is a genuine issue of material fact as to when the physician-patient relationship ended.

 III.  Whether Sections 1 and 2 of the Act violate Article I, Section 12 of the Indiana Constitution and the Fourteenth Amendment of the United States Constitution.

 IV.  Whether allegations of negligence in the performance of sterilization surgery present a claim upon which relief can be granted.

## I. Requirement of pleading fraudulent concealment.

    ■  In granting the motion for summary judgment, the trial court stated, "There does not appear in the record any stated defense of fraudulent concealment by the Plaintiffs as being an issue in this case as a defense to the statute of limitations argument." The Spoljarics misconstrue this statement as a requirement that they plead fraudulent concealment in a reply to the answer which raised the statute of limitations defense. Such a reply was not required. *Adams v. Luros* (1980), Ind.App., 406 N.E.2d 1199. However, the Spoljarics were not able to rely on the bare allegations of their complaint were faced with the motions for summary judgment filed by the doctors and the hospital. *Johnson v. Padilla* (1982), Ind.App., 433 N.E.2d 393. While the movant has the initial burden of proving there is no genuine issue of material fact for trial, upon such showing, the non-movant must demonstrate the existence of a genuine issue. *Id.* Whether the trial court erred by failing to recognize the effect of fraudulent concealment on the statute of limitations defense depends on whether the Spoljarics sufficiently raised the issue in Paula Spoljaric's answers to interrogatories, which will be considered below.

## II. Existence of genuine issue of material fact; fraudulent concealment.

The following facts before the trial court were undisputed. The Spoljarics employed Dr. Pangan to assist with the delivery of their second child, Heather, who was born August 7, 1978. They thereafter employed

---

1.  IC 16–9.5–3–1 states:

    "No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or which should have been rendered unless filed within two (2) years from the date of the alleged act, omission or neglect except that a minor under the full age of six (6) years shall have until his eighth birthday in which to file. This section applies to all persons regardless of minority or other legal disability."

2.  *See* Indiana Rules of Procedure, Trial Rule 12(B) and Trial Rule 56. *See also Salem Bank and Trust Co. v. Whitcomb* (1972), 154 Ind.App. 229, 289 N.E.2d 537 (motion to dismiss automatically converted to motion for summary judgment where interrogatories were filed and answered and made part of the record before trial court ruled on the motion). Hereinafter the motions filed by the doctors and the hospital will be refered to as motions for summary judgment.

Dr. Pangan to sterilize Paula by a procedure known as a laparoscopic bilateral tubal ligation. He performed the operation at the hospital on October 16, 1978. After the operation, Doctor Sacris ordered further testing to determine whether Paula had been successfully sterilized. At some time in October or November of 1978, Dr. Poracky performed that test, a salpingogram, at the hospital. Inexplicably neither evidence of the test results nor of any effort by Spoljarics to discover them appear in the record.

Around July of 1979, Paula became pregnant and discovered that fact four to six weeks later. On May 7, 1980, she gave birth to the Spoljarics' third child, Kimberly. The Spoljarics' complaint was filed June 9, 1981.

On these facts, the doctors and the hospital filed motions to dismiss based on the running of the statute of limitations.

The statute of limitations applicable here is IC 16-9.5-3-1.[3] It provides in part that no medical malpractice claim may be brought "unless filed within two (2) years from the date of the alleged act, omission or neglect...." This statute has repeatedly been described as an "occurrence" statute rather than a "discovery" statute, *Colbert v. Waitt* (1982), Ind.App., 445 N.E.2d 1000; *Carrow v. Streeter* (1980), Ind.App., 410 N.E.2d 1369; *Toth v. Lenk* (1975), 164 Ind.App. 618, 330 N.E.2d 336, although some discomfort with this classification has been expressed. *See Alwood v. Davis* (1980), Ind.App., 411 N.E.2d 759.

The Spoljarics attempted to introduce the issue of fraudulent concealment to toll the running of the statute of limitations. Fraudulent concealment as it relates to medical malpractice claims in Indiana was first discussed in *Guy v. Schuldt* (1956), 236 Ind. 101, 138 N.E.2d 891.[4] The significance of the doctrine of fraudulent concealment is that it operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or

the violation of a duty, has concealed material facts from the plaintiff preventing discovery of a wrong. *Guy, supra; Colbert v. Waitt, supra.* According to *Guy*, this equitable estoppel can arise either from an active effort to conceal a cause of action or from the failure to disclose material information where a fiduciary or confidential relationship between the parties exists.

In the context of a medical malpractice claim, the focus is on the duties arising under the physician-patient relationship. We followed *Guy* in *Toth v. Lenk* (1975), 164 Ind.App. 618, 330 N.E.2d 336 where we said:

"The duty of the physician to disclose that which he knows, or in the exercise of reasonable care should have known, satisfies the requirement of conduct and constitutes a constructive fraud.

Under this analysis the constructive fraud would terminate with the termination of the physician-patient relationship and the statute would commence to run.

It must be emphasized, however, that the nature of the exception is equitable and relies upon an estoppel theory.

Accordingly, where the patient learns of the malpractice or learns information which would lead to discovery of the malpractice if the patient exercised diligence to discover, the statute will commence to run."

*Toth*, 330 N.E.2d at 339, 340 (citations omitted).

■ Fraudulent concealment thus tolls the running of the statute of limitations until either the end of the physician-patient relationship or the discovery of the malpractice by the patient or of information which in the exercise of reasonable diligence would lead to its discovery.

■ In addition to the facts already stated establishing a prima facie case that the statute of limitations had run, the trial court had before it Paula's answers to interrogatories. As products of discovery

---

3. *See* n. 1, *supra.*

4. When *Guy* was decided, the medical malpractice statute of limitations was Burns Section 2-627 which later became IC 34-4-19-1.

these answers are to be liberally construed in the Spoljarics' favor in considering the doctors' and hospital's motions for summary judgment. *Adams v. Luros* (1980), Ind. App., 406 N.E.2d 1199. Summary judgment is not appropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from the facts.

The relevant interrogatories propounded to Paula read as follows:

"19. Please state the name and business address of each and every physician, surgeon, osteopath, drugless practitioner, Christian Science healer, or chiropractor who has professionally observed and/or attended to you from 1970 to this date.

20. For each such physician, surgeon, osteopath, drugless practitioner, Christian Science healer, or chiropractor so identified above, state the date or dates of such observation or attendance and the place or places of such attendance or observation."

Transcript, p. 35.

Paula's answers, if assumed to be responsive to the interrogatories, were that she was professionally observed or attended to by Doctors Pangan and Sacris through June of 1979 and by Doctor Poracky in October or November of 1978. No evidence is offered of any office visit, consultation or other contact with any of the doctors after November of 1978. The Spoljarics contend nonetheless that the answers establish that Doctors Pangan and Sacris and the hospital had a duty to disclose through June of 1979 and that there is a question of fact as to whether Doctor Poracky had such a duty beyond November of 1978. As support for the latter contention the Spoljarics cite *Adams, supra* where the court stated in a footnote:

"We feel, under *Guy*, that it is theoretically possible that a duty to disclose continues as long as there is a physician-patient relationship, even though there may not be actual consultation for a period of time. In short, we do not think the relationship *necessarily*, as a matter of law, ends at the last consultation."

*Adams, supra*, 406 N.E.2d at 1202, n. 2.

The *Adams* court went on to state certain facts to be considered in determining when the physician-patient relationship ended. It said:

"There are many factors that enter into the analysis of determining when a physician-patient relationship ends. The subjective views of the parties are important and a consideration must be given to objective factors, including, but not limited to, the frequency of visits, whether a course of treatment was prescribed by the doctor (to be followed with or without consultation), the nature of the illness, the nature of the physician's practice and whether the patient began consulting other physicians for the same malady."

*Adams, supra*, 406 N.E.2d at 1203.

The Spoljarics apparently believe they have satisfied their burden of raising a question of material fact by citing law to the effect that the physician-patient relationship does not *necessarily* end at the last consultation and that the subjective view of the patient is one factor to consider in determining the relationship. We are forced to disagree with the Spoljarics' assertion that they have satisfied their burden.

The cases which have recognized a question of fact as to how long after the last consultation the physician-patient relationship continues are factually distinguishable from the present case. *See Carrow v. Streeter* (1980), Ind.App., 410 N.E.2d 1369 (fact that last visit was on April 1, 1974 when physician told patient that postoperative pain was psychological and gave patient a prescription lasting into 1975 presented material question of fact as to whether fraudulent concealment tolled the statute of limitations to allow filing of complaint in July of 1976); *Adams v. Luros* (1980), Ind.App., 406 N.E.2d 1199 (fact that physician who patient consulted in 1973 for back pain told patient to live with the pain raised jury question as to how long physi-

cian-patient relationship, and therefore patient's reliance, lasted up to the 1977 discovery of a tumor in patient's spinal cord). *Accord Weinstock v. Ott* (1983), Ind.App., 444 N.E.2d 1227 (jury permitted to make factual conclusion that, despite intervening consultations with other doctors, physician-patient relationship extended from October of 1972 until the last of fifty-five office visits on September 19, 1976).

No Indiana cases have allowed a question of fact to be raised solely upon the subjective assertion by the patient that the physician-patient relationship exists or the mere contention that the relationship does not necessarily end at the last consultation. We recently decided the case of *Wojcik v. Almase* (1983), Ind.App., 451 N.E.2d 336. Wojcik was treated in a hospital for injuries suffered in an automobile accident. During treatment part of a catheter broke off and became lodged in his chest. This fact went undetected and Wojcik left the hospital in October of 1978. The catheter piece was discovered on May 1, 1979 when an x-ray was taken in the course of an unrelated examination. We affirmed the trial court's grant of summary judgment against Wojcik on a claim he filed April 3, 1981. We were not persuaded by his contention that "his dismissal from the hospital constituted a representation that he was well and need take no course of action in the future regarding his ailment," 451 N.E.2d at 340. We said:

> "We agree with the proposition that where a doctor represents that a certain condition is to be expected to continue into the future or prescribes a course of treatment to be followed for a period of time, a constructive fraud can be found which will delay the running of the statute of limitations for the time the doctor has indicated. However, we also believe that where no such representations are made the patient's reliance does not continue beyond the time he and the doctor ceased their association."

*Wojcik*, 451 N.E.2d at 340. The two year statute of limitations in *Wojcik* ran no longer than from the date of his hospital dismissal until October of 1980.

A similar case is *Colbert v. Waitt* (1982), Ind.App., 445 N.E.2d 1000. In *Colbert* two doctors, Lloyd and Waitt, performed a hysterectomy on Mrs. Colbert on January 20, 1978. Complications arose and she was transferred to another hospital under another doctor's care on March 4, 1978. Mrs. Colbert argued that the physician-patient relationship did not end until October of 1978 when she learned of her complete renal failure. The trial court granted summary judgment in favor of Doctors Lloyd and Waitt on the ground that the statute of limitations had run before September 23, 1980 when Mrs. Colbert filed suit. The Fourth District affirmed. After her March 4th transfer Mrs. Colbert no longer considered Dr. Waitt to be her doctor and he did not prescribe any course of treatment for her. The only inference to be drawn was that the physician-patient relationship extended no later than March 4, 1978 and her claim against Dr. Waitt was time-barred. Although Mrs. Colbert stated in an affidavit that Doctor Lloyd was her family physician through October of 1978, other statements indicated she did not rely on him for this particular complication and neither saw nor contacted him after March 4, 1978. She was in fact relying on the care of another doctor.

█ We must also affirm the trial court here. What we are concerned with under the doctrine of *Guy* is whether the conduct of the defendants was such that equity should preclude them from asserting the limitations period. Since no affirmative conduct on the part of the defendants was asserted the equitable bar must rest upon the failure of the physicians to disclose while they had a fiduciary obligation to do so. Taking into consideration the lack of any factual assertion that the physicians had actual knowledge that the surgical procedure was unsuccessful, and the normal absence of any formal procedure in the termination of a professional relationship, we feel constrained to determine that a genuine issue for equitable intervention is not made out solely by the patient's asser-

tion of a subjective belief in the continuance of the physician-patient relationship.

The doctors and the hospital established a prima facie case that the last day for the Spoljarics to file their claim was no later than in November of 1980. The Spoljarics were not obligated to present their entire case at that time but they were required to come forward with sufficient evidence to show the existence of a genuine triable issue. *Pan American World Airways, Inc. v. Local Readers Service, Inc.* (1968), 143 Ind.App. 370, 240 N.E.2d 552. The trial court did not err in holding the Spoljarics had failed to raise the issue of fraudulent concealment as a defense to the running of the statute of limitations.

There is, however, an additional problem. Even if the Spoljarics established a disputed question of fact concerning continuation of the physician-patient relationship through June of 1979, we would be required to affirm the trial court.

As stated by the New York Court of Appeals in *Simcuski v. Saeli* (1978), 44 N.Y.2d 442, 447, 377 N.E.2d 713, 717, 406 N.Y.S.2d 259, 263, it is as important to determine the effect of the doctrine of equitable estoppel as it is to determine that it applies.

It must be recalled that statutes of limitation are favored by the courts. *Marshall v. Watkins* (1939), 106 Ind.App. 235, 18 N.E.2d 954. They are statutes of repose, founded upon a rule of necessity and convenience and the well-being of society. *Short v. Texaco* (1980), 273 Ind. 518, 406 N.E.2d 625, *aff'd.* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738. In particular they afford protection to defendants against defending stale claims after a reasonable period of time has elapsed during which a person of ordinary diligence would bring an action. *Flanagan v. Mount Eden General Hospital* (1969), 24 N.Y.2d 427, 248 N.E.2d 871, 301 N.Y.S.2d 23.

Concerning the value of repose, it has been generally noted that a potential defendant's equities are the same whether the plaintiff knows of his condition or not, *Schwartz v. Heyden Newport Chemical Co.* (1963), 12 N.Y.2d 212, 188 N.E.2d 142, 145, 237 N.Y.S.2d 714, 718, and that courts permit the defense of limitations to function arbitrarily without discrimination between the just and unjust claim, or the avoidable and unavoidable delay. *Johns Hopkins Hospital v. Lehninger* (1981), 48 Md.App. 549, 429 A.2d 538, 545. *See Bunker v. National Gypsum Co.* (1982), Ind., 441 N.E.2d 8, appeal dismissed, 103 S.Ct. 1761, 76 L.Ed.2d 338.

On the other hand, our courts will attempt to avoid absurd results which the legislature could not have intended. *Chaffin v. Nicosia* (1974), 261 Ind. 698, 310 N.E.2d 867.

Thus, in *Guy v. Schuldt* (1956), 236 Ind. 101, 138 N.E.2d 891 our Supreme Court determined that equitable estoppel would operate to prevent the running of the medical malpractice statute of limitations in cases of fraudulent concealment. Underscoring the equitable nature of this defense to a limitations claim, the court additionally held that Burns Section 2–609 [now IC 34–1–2–9] which defers commencement of the time a statute of limitations will begin to run, did not apply to the medical malpractice statute of limitations. 138 N.E.2d at 893.[5] The doctrine announced in *Guy* provides an equitable defense, not an exception to the statute. *Nahmias v. Trustees of Indiana University* (1983), Ind.App., 444 N.E.2d 1204. As such, it is subject to the general principles that apply in equity.

In the case at bar Spoljarics admittedly were aware of her pregnancy, and therefore the failure of the tubal ligation, at

---

5. The statute provides:

"If any person liable to an action, shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation, after the discovery of the cause of action."

The New York courts have taken the same approach. *Schwartz, supra; Monko v. St. John's Queens Hospital* (1963), 41 Misc.2d 993, 246 N.Y.S.2d 511.

least by August of 1979. If the statute of limitations commenced to run according to its terms on October 16, 1978, then at the time of Spoljarics' discovery there still remained approximately fourteen months within which an action could have been commenced without any extension whatever of the statutory limitations period. On the other hand, if the statutory period only began to run for the first time with discovery of the pregnancy, then their complaint filed in June 1981 would be timely.

Some of our decisions appear to suggest this latter interpretation referring to a statement in *Guy v. Schuldt, supra,* that after the physician-patient relationship ends, "the statute of limitations is no longer tolled by any fraudulent concealment and begins to run." 138 N.E.2d at 895. However, our research reveals no Indiana decision that has so held. The cases since *Guy* fall into three basic categories:

1) Those in which the grant of summary judgment was affirmed because the physician-patient relationship ended as a matter of law more than two years before filing the claim: *Wojcik v. Almase* (1983), Ind. App., 451 N.E.2d 336; *Colbert v. Waitt* (1982), Ind.App., 445 N.E.2d 1000; *Carmichael v. Silbert* (1981), Ind.App., 422 N.E.2d 1330; *Alwood v. Davis* (1980), Ind. App., 411 N.E.2d 759; *Snyder v. Tell City Clinic* (1979), 181 Ind.App. 188, 391 N.E.2d 623.

2) Those in which the grant of summary judgment was affirmed because the patient discovered evidence of malpractice more than two years before filing the claim: *Nahmias v. Trustees of Indiana University* (1983), Ind.App., 444 N.E.2d 1204; *Toth v. Lenk* (1975), 164 Ind.App. 618, 330 N.E.2d 336.

3) Those in which there was a fact question as to when the physician-patient relationship ended and filing was within two years of the last possible date: *Weinstock v. Ott* (1983), Ind.App., 444 N.E.2d 1227; *Carrow v. Streeter* (1980), Ind.App., 410 N.E.2d 1369; *Adams v. Luros* (1980), Ind. App., 406 N.E.2d 1199.

For several reasons we are persuaded that the inference that the entire two year period should only commence to run from discovery of the concealment is incorrect.

First of all the statement from *Guy* may have been meant to signal no more than removal of the equitable bar. As a holding it certainly constituted no more than that and it should be read in context with the court's further explanation that "[w]hile a wrongdoer is concealing from an injured person his wrongful act, the law will not ... strip the injured party of his remedy...." 138 N.E.2d at 894 (our emphasis).

Secondly, if as so often reiterated, we are to enforce the legislative purpose in providing an occurrence statute of limitations, then we do so best by recognizing that equity will prevent the statute from barring a plaintiff's claim during the period the plaintiff is "equitably disabled" not that it will provide a plaintiff with an entirely new period. In the practical sense, this appears especially true in the medical malpractice area where a substantial number of claims are posited upon the theory that the physician had a duty to disclose a misfeasance or nonfeasance of which he had no actual knowledge. In such cases the very act of malpractice may become the basis for the claimed relief from the statute. The consequence of affording a plaintiff an "additional" two years to bring an action is the substantial emasculation of the "occurrence" provision.

Furthermore, the essence of an equitable defense is that it provides what equity requires. In *Brown v. Gardner* (1974), 159 Ind.App. 586, 308 N.E.2d 424 where we were concerned with an equitable claim of fraudulent concealment as a defense to the statute of limitations for commencing a will contest, we said:

"The exception [fraudulent concealment], however is narrow. The fraudulent conduct must be an efficient cause of the failure to timely commence the action, and the other elements entitling the party to equitable relief must be present."

308 N.E.2d at 428.

Thus a number of jurisdictions, and we think the better opinions, have held that

where grounds exist for estopping a defendant from claiming the statute of limitations as a defense, estoppel will nevertheless be denied if the plaintiff fails to exercise due diligence in filing an action after the equitable grounds cease to be operational as a valid basis for inducing plaintiff's delay. *See, e.g.,* Annot., 43 A.L.R.3d 429, 453; 44 A.L.R.3d 760, 765.

As stated in *Property 10–F, Inc. v. Pack & Process, Inc.* (1970), D.C.App., 265 A.2d 290, a contract case:

> "But the effect of such estoppel is not to stop the running of the statute or to create a new date for its commencement. If ample time to file suit within the statutory period exists after the circumstances inducing delay have ceased, there is no estoppel against pleading the bar of the statute."

265 A.2d 291.

The rule has been applied to medical malpractice claims. *Simcuski v. Saeli* (1978), 44 N.Y.2d 442, 447, 377 N.E.2d 713, 406 N.Y.S.2d 259; *Reat v. Illinois C.R. Co.* (1964), 47 Ill.App.2d 267, 197 N.E.2d 860; *McCoy v. Wesley Hospital & Nurses Trng. School* (1961), 188 Kan. 325, 362 P.2d 841.

■ Of course, the plaintiff should have a reasonable time within which to commence an action after the inequitable conduct ceases to operate to induce delay. Where the period between discovery and the date upon which the statute would ordinarily expire is relatively short a fact question may be presented as to whether the time remaining was a reasonable time within which a person exercising diligence should have commenced suit. *Delson v. Minogue* 190 F.Supp. 935 (twenty-four days).[6]

■ In the present case Spoljarics had well over a year within which an action might have been commenced before the statute, according to its plain terms, expired. Under such circumstances we have no difficulty in stating as a matter of law

that this was sufficient time for a reasonable person exercising diligence to have commenced an action. Spoljarics' failure to commence their action within the statutory period barred their claim. The defendants were not equitably estopped from asserting the statutory bar since as a matter of law their alleged fraudulent concealment ceased to be operational more than a year before expiration of the two year limitation period.

### III. Constitutionality of IC 16–9.5–3–1 and 16–9.5–3–2.

■ The Spoljarics contend that Sections One and Two of the Act as applied to them violate Article 1, Section 12 of the Indiana Constitution and Section 1 of the fourteenth amendment of the United States Constitution, and that they "are within a class of patients who would be unaware of the existence of their cause of action against a professional until after the statute of limitations had expired." Appellants' brief at 18. To the extent that the Spoljarics' constitutional attack is not answered by our Supreme Court's holdings in *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585, and *Rohrabaugh v. Wagoner* (1980), Ind., 413 N.E.2d 891, we note additionally that the Spoljarics are not in the class to which they claim membership. They were not unaware of the existence of their cause of action until after the statute of limitations had expired. Accordingly we need not address further their constitutional challenges.

### IV. Stating a claim upon which relief can be granted.

Because the Spoljarics' claim was barred by the statute of limitations we need not consider whether their complaint stated a claim upon which relief could have been granted. However, we see no reason why this action sounding in negligence should not be heard by a court in this state. The

---

6. Even then the requirement of diligence as related to the actual filing date should persist.

*Simcuski, supra.*

argument presented to us addresses the proper measure of damages in such cases. While that question is better left for decision in a case where it is squarely presented, clearly there would be some damage resulting from an ineffectively performed sterilization.

Affirmed.

STATON, P.J., concurs.

HOFFMAN, J. concurs except in paragraph IV, stating a claim upon which relief can be granted.