Frank A. **WORKMAN**, M.D., Daniel W. Voegele, M.D., and Jim Atterholt, Commissioner, Indiana Department of Insurance, Appellants–Defendants,

v.

Ann O'BRYAN, Appellee–Plaintiff.

No. 29A05–1003–PL–00169.

Court of Appeals of Indiana.

Feb. 24, 2011.

Robert G. Zeigler, Karen L. Withers, Zeigler Cohen & Koch, Indianapolis, IN, Attorneys for Appellants.

John Muller, Montross Miller Muller Mendelson & Kennedy, Indianapolis, IN, Attorney for Appellee.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issue

On interlocutory appeal, Dr. Frank Workman appeals the trial court's denial of his motion for summary judgment in this medical malpractice case brought by Ann O'Bryan. The sole issue for our review is whether Dr. Workman is entitled to summary judgment on the two-year occurrence-based statute of limitations.

Concluding that Dr. Workman is not entitled to judgment as a matter of law, we affirm.

### Facts and Procedural History[1]

This case arises from O'Bryan's proposed complaint, filed in 2007, alleging negligence by Dr. Workman in failing to diagnose her chronic urinary retention that eventually caused kidney damage. O'Bryan also alleges negligence on the part of Dr. Daniel Voegele, her primary care physician during the same relevant times.[2] We recite the facts in the light most favorable to O'Bryan, the nonmovant.

Dr. Workman is a practicing oncologist who, starting on February 4, 2004, treated O'Bryan for Hodgkin's disease. On February 13, 2004, a full-body PET scan ordered by Dr. Workman was conducted on O'Bryan. The purpose of the PET scan was to determine the stage of the Hodgkin's disease. The radiologist who read the PET scan wrote for Dr. Workman's review that it showed a "very enlarged urine filled bladder which is supposedly a post void picture. Does the patient have acute urinary retention or neurogenic bladder?" Appendix of Appellant at 114. O'Bryan did not see the PET scan results and was not informed of the incidental finding of urinary retention, despite having further visits with Dr. Workman in each of the following six months. Dr. Workman did not take any action regarding the finding of urinary retention, and there is no evidence that he forwarded the PET scan results or the radiologist's notation to Dr.

---

1. Dr. Workman has filed a motion to strike three paragraphs of O'Bryan's amended brief that were not included in her original brief. O'Bryan then filed a response to Dr. Workman's motion to strike, and Dr. Workman filed, and this court accepted for filing, a request for leave to file a reply to O'Bryan's response. Having reviewed these filings, we find that the arguments Dr. Workman asks to

be stricken are immaterial to our decision to affirm the trial court, and we therefore deny as moot Dr. Workman's motion to strike as well as his request for leave to file a reply.

2. Dr. Voegele does not participate in this appeal, but because he is a party in the trial court remains a party on appeal pursuant to Indiana Appellate Rule 17(A).

Voegele or O'Bryan's other treating physicians.

On November 1, 2004, O'Bryan underwent gallbladder surgery at Methodist Hospital. Following the operation, she experienced for the first time an inability to urinate. On November 3, 2004, O'Bryan was seen by a urologist who found her to have "[p]ostop urinary retention" and recommended "intermittent catheterization in the hopes that she will start voiding spontaneously." *Id.* at 128; *see also id.* at 203. O'Bryan was told that difficulty urinating frequently occurs after surgery, that her normal function would return, and was instructed on how to catheterize herself in the meantime. Her discharge instructions told her to follow up with the urologist and contact him regarding any problems using the catheter. Upon returning home, O'Bryan used the catheter for three to four days and thereafter was able to urinate on her own.

On January 28, 2005, O'Bryan was seen by Dr. Workman for the last time, her Hodgkin's disease having gone into clinical remission.

On December 7, 2006, O'Bryan felt ill and saw Dr. Voegele, who ordered various laboratory tests. The tests showed, for the first time, that O'Bryan had abnormally high levels of BUN and creatine indicative of renal failure. On December 14, 2006, Dr. Voegele's nurse called O'Bryan and informed her that she had renal failure. The next day, O'Bryan went to the emergency department of Wishard Hospital to be treated for renal failure.

In late December 2006 or early 2007, O'Bryan relocated to Texas for family-related reasons. Before moving, she requested and received her medical file from Dr. Workman. In March 2007, O'Bryan first reviewed the file, which included the PET scan results from February 2004. She showed the PET scan results to her physicians in Texas, who then performed an ultrasound and diagnosed her with urinary retention as a result of a neurogenic bladder. O'Bryan continues to suffer from a neurogenic bladder and reduced kidney function.

On December 12, 2007, O'Bryan filed her proposed complaint with the Indiana Department of Insurance. The proposed complaint alleged the substandard care of Dr. Workman "occurred after February 13, 2004 when the condition should have first be [sic] diagnosed and continued on until its diagnosis in March 2007." *Id.* at 38. Specifically, O'Bryan alleged that the PET scan in 2004 raised the possibility that she was suffering from urinary retention caused by a neurogenic bladder, and that if Dr. Workman had evaluated her for urinary retention or alerted her primary care physician to the need for such an evaluation, she would more likely than not have avoided kidney damage.

Dr. Workman filed with the trial court a motion for preliminary determination of law, seeking summary judgment based on the statute of limitations. Following a hearing, the trial court issued its order denying summary judgment. Dr. Workman filed a motion to reconsider or, alternatively, certify the order for interlocutory appeal. The trial court certified its summary judgment order for interlocutory appeal, and on Dr. Workman's motion, this court accepted jurisdiction.

## Discussion and Decision

### I. Standard of Review

When reviewing the grant or denial of summary judgment, we apply the same standard as the trial court: summary judgment is proper only when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C);

*Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692, 695 (Ind.2000). All facts and reasonable inferences therefrom are construed in a light most favorable to the nonmovant. *Boggs,* 730 N.E.2d at 695. "The defense of a statute of limitation is peculiarly suitable as a basis for summary judgment." *Morgan v. Benner,* 712 N.E.2d 500, 502–03 (Ind.Ct.App.1999), *trans. denied.* When the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense. *Boggs,* 730 N.E.2d at 695. Any doubts as to the existence of a material issue are resolved in favor of the nonmovant. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996).

## II. Statute of Limitations

■ Indiana Code section 34–18–7–1 provides that a claim against a health care professional, based upon health care that was provided or should have been provided, must be filed "within two (2) years after the date of the alleged act, omission, or neglect." As our supreme court has held:

> This occurrence-based limitations period is constitutional on its face. *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 403–04, 404 N.E.2d 585, 603–04 (1980). *Martin v. Richey,* 711 N.E.2d 1273, 1279 (Ind.1999), reaffirmed the holding in *Johnson* that the Indiana Constitution does not mandate a discovery rule or preclude an occurrence-based limitations period. We held, however, that the statute denied any remedy and therefore violated the Indiana Constitution if applied to bar the claim of a patient who could not reasonably be expected to learn of the injury within the two-year period. *Id.* at 1282. We later held that

the same applies to a patient who knows of the injury but is unable in exercise of "reasonable diligence" to attribute it to malpractice. *Booth v. Wiley,* 839 N.E.2d 1168, 1172 (Ind.2005).

*Herron v. Anigbo,* 897 N.E.2d 444, 448 (Ind.2008) (plurality opinion). In *Booth,* our supreme court held that courts should apply the following analysis when the medical malpractice statute of limitations is raised as a defense:

> Initially, a court must determine the date the alleged malpractice occurred and determine the discovery date—the date when the claimant discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonably diligent person to make such discovery. If the discovery date is more than two years beyond the date the malpractice occurred, the claimant has two years after discovery within which to initiate a malpractice action. But if the discovery date is within two years following the occurrence of the alleged malpractice, the statutory limitation period applies and the action must be initiated before the period expires, unless it is not reasonably possible for the claimant to present the claim in the time remaining after discovery and before the end of the statutory period. In such cases where discovery occurs before the statutory deadline but there is insufficient time to file … we hold that such claimants must thereafter initiate their actions within a reasonable time.

839 N.E.2d at 1172.

Applying the first step of this analysis, the alleged malpractice of Dr. Workman occurred between February 13, 2004—the date of the PET scan—and, at the latest, January 28, 2005—the date Dr. Workman last saw O'Bryan. When the sole claim of malpractice is a failure to diagnose, the

date of the malpractice "cannot as a matter of law extend beyond the time the physician last rendered a diagnosis." *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind. 1991). Thus in *Havens*, the two-year statutory period began to run from the date the patient last visited the physician, because that was the last opportunity the physician had to give a proper diagnosis. *Id.* at 795–96. O'Bryan's last visit with Dr. Workman, on January 28, 2005, was the latest he could have had a duty to review her file and perform or recommend further evaluation of her urinary retention as noted on the PET scan. Thus, the two-year statutory period began on January 28, 2005 and expired on January 28, 2007.

▋ Turning to the next step, O'Bryan's discovery date (in the language of *Booth*) or trigger date (the term used in *Herron*, 897 N.E.2d at 449) was, we conclude, December 14, 2006 at the earliest or March 2007 at the latest. On December 14, 2006, O'Bryan was diagnosed with renal failure. Her receipt of a correct diagnosis gave her knowledge of her injury and brought to light the possibility that previous treating physicians, including Dr. Workman, may have been negligent in failing to diagnose her condition or prevent its progression. We disagree with Dr. Workman's argument that the trigger date was in November 2004. In November 2004, O'Bryan was told she had post-operative urinary retention—a condition that, she was led to believe, was a temporary result of her gallbladder surgery and would resolve itself spontaneously. Nothing in that diagnosis, regardless of whether it was correct, put O'Bryan on notice of any claim against Dr. Workman, who was not involved in performing or following up the gallbladder surgery. Neither did O'Bryan have any symptoms from which the chronic nature of her urinary retention or her kidney damage could have been apparent to her.[3] Her inability to urinate following the gallbladder surgery ceased within a few days, consistent with the urologist's diagnosis of acute, post-operative urinary retention, and did not indicate a chronic or long-standing condition.[4] O'Bryan makes a strong argument, and the trial court agreed, that her trigger date was not until March 2007 because only then did O'Bryan, first reviewing her file from Dr. Workman, have the knowledge that her injury related back to his omission concerning the PET scan. However, we need not decide whether the trigger date was December 14, 2006 or March 2007 because it is ultimately irrelevant to our disposition of this case.[5]

▋ Assuming then that O'Bryan's trigger date was December 14, 2006, because

---

3. Dr. Workman asserts that O'Bryan, in her proposed complaint, admitted having " 'numerous symptoms that should have led to a consideration of the condition.' " Brief of Appellant at 15–16 (quoting App. of Appellant at 39). The quoted language is taken from O'Bryan's claim against Dr. Voegele, and in context refers to symptoms that Dr. Voegele as a primary care physician, not necessarily O'Bryan as a layperson, allegedly should have considered as indicative of urinary retention or kidney failure. Dr. Workman also notes that O'Bryan spoke with Dr. Voegele about her difficulty in urinating enough following the gallbladder surgery. However, according to O'Bryan's deposition testimony, Dr. Voegele declined to treat her for urinary prob-

lems at that time. Thus, O'Bryan still was not on notice prior to December 14, 2006 that her urinary problem was severe or that it was impairing her kidney function.

4. Designated evidence indicates that urinary retention can be either acute or chronic, and that a neurogenic bladder, which O'Bryan later discovered she had, is but one of several possible causes. App. of Appellant at 243.

5. If the trigger date was March 2007, then, as the trial court reasoned, O'Bryan had until March 2009 to initiate her action and did so well within that time.

the two-year statutory period expired on January 28, 2007, O'Bryan was obligated to file her proposed complaint by the latter date unless it was not reasonably possible to do so. Given the facts and circumstances of this case, we conclude it was not reasonably possible. Even after she received the correct diagnosis of renal failure, reasonable diligence still required O'Bryan to piece together a number of facts and inferences before being able to bring her claim against Dr. Workman. Initially she needed to investigate whether Dr. Workman knew or should have known of her urinary retention while he was treating her for Hodgkin's disease, and if so, whether he failed to communicate the incidental finding of urinary retention to her other treating physicians. O'Bryan also needed to obtain informed opinions on whether Dr. Workman's omissions deviated from the standard of care and whether a legal remedy was available. In order to file her proposed complaint in Indiana, she needed to consult an Indiana attorney at the same time as she was moving or had recently moved to Texas for family-related reasons. The roughly six weeks that remained between the trigger date for O'Bryan's claim and the end of the statutory period were not sufficient time to accomplish all of these actions and get a claim on file. *Cf. Herron,* 897 N.E.2d at 453 (concluding that "[a]s a matter of law four months was sufficient time to get a claim on file unless [the patient] offered evidence that he was not reasonably able to consult an attorney who could investigate and file any claim within the limitations period").

Because O'Bryan's trigger date occurred before the statutory deadline, but there was insufficient time to file, O'Bryan

was obligated to thereafter initiate her malpractice action within a reasonable time. *See Booth,* 839 N.E.2d at 1172. Review of Indiana cases indicates that delays of over one year are likely to be unreasonable. *See Boggs,* 730 N.E.2d at 698–99 (concluding, in context of exception for fraudulent concealment, twenty-two and one-half months was unreasonable); *Moyer v. Three Unnamed Physicians from Marion County,* 845 N.E.2d 252, 259 (Ind. Ct.App.2006) (concluding delay of more than eighteen months after patient's discovery date was unreasonable).[6] In *Spoljaric v. Pangan,* 466 N.E.2d 37 (Ind.Ct. App.1984), *trans. denied,* this court concluded that, as a matter of law, plaintiffs who "had well over a year within which an action might have been commenced before the statute ... expired" had "sufficient time for a reasonable person exercising diligence to have commenced an action." *Id.* at 45; *see id.* at 43–44 (fourteen-month delay). Yet we do not read these cases as standing for a bright-line proposition that delays over one year are presumptively unreasonable as a matter of law, in light of our supreme court's statement declining to adopt such an approach. *See Van Dusen v. Stotts,* 712 N.E.2d 491, 496 n.2 (Ind. 1999).

O'Bryan filed her proposed complaint on December 12, 2007—ten and one-half months after the two-year statutory period and nearly one year after her earliest possible trigger date. Given the facts and circumstances of this case—particularly that in December 2006 it still was not obvious, and O'Bryan had no actual knowledge, that Dr. Workman committed any sort of omission with respect to her diagnosis or treatment—we cannot say as a matter of law that such a length of time

---

**6.** *See also Comer v. Gohil,* 664 N.E.2d 389, 392 (Ind.Ct.App.1996) (concluding delay of over twenty-one months unreasonable), *trans.* denied; *Cyrus v. Nero,* 546 N.E.2d 328, 331 (Ind.Ct.App.1989) (concluding twenty-two-month delay unreasonable).

was unreasonable. Dr. Workman argues that any time more than four months is unreasonable as a matter of law, citing *Herron,* where our supreme court concluded four months remaining within the two-year statutory period was enough time for it to be reasonably possible for the patient to file his claim. Because of that conclusion, however, the *Herron* court did not address the limits of a reasonable time beyond the statutory period, which the supreme court's opinion in *Booth* indicates is a separate issue with a less demanding standard. *See Booth,* 839 N.E.2d at 1172. Even where, as here, the facts relevant to the statute of limitations issue are not in dispute, an issue of material fact remains if the undisputed facts are capable of supporting conflicting inferences on an outcome-determinative issue. *See Cook v. Ford Motor Co.,* 913 N.E.2d 311, 318 (Ind. Ct.App.2009), *trans. denied.* We conclude O'Bryan has met her burden to show, at least, an issue of material fact as to whether she filed her proposed complaint within a reasonable time, and therefore Dr. Workman is not entitled to summary judgment based on the statute of limitations.

*Conclusion*

The trial court correctly concluded that Dr. Workman is not entitled to summary judgment on the issue of the statute of limitations. The trial court's order denying Dr. Workman's motion for summary judgment is affirmed.

Affirmed.

RILEY, J., and BROWN, J., concur.