Tracey L. BESWICK and Ruthie
Beswick, Appellants,

v.

Edward E. BELL, M.D., and Floyd
Memorial Hospital & Health
Services, Appellees.

No. 22A01–1005–CT–260.

Court of Appeals of Indiana.

Dec. 22, 2010.

Rehearing Denied February 17, 2011.

Karen B. Neiswinger, Indianapolis, IN, Attorney for Appellants.

Matthew Hunter Jones, Tyson P. Schroeder, Boehl Stopher & Graves, LLP, New Albany, IN, Attorneys for Appellee Floyd Memorial Hospital & Health Services.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Tracey L. Beswick ("Beswick") and his wife, Ruthie Beswick, (collectively, "the Beswicks") appeal the trial court's order granting summary judgment in favor of Floyd Memorial Hospital and Health Services ("Floyd Memorial") in the medical malpractice action that they brought

against Edward E. Bell, M.D. and Floyd Memorial.

We affirm.

## ISSUES

1. Whether the trial court erred by striking the affidavit of Michael Roback, M.D., submitted by the Beswicks in opposition to Floyd Memorial's motion for summary judgment.

2. Whether the trial court erred in granting Floyd Memorial's motion for summary judgment.

## FACTS

On March 5, 2004, Beswick was admitted to Floyd Memorial for surgery to repair a comminuted fracture to his left elbow at the head of his radius bone. Dr. Bell, a board-certified orthopedic surgeon whose relationship with Floyd Memorial was that of an independent contractor, performed the surgery—cutting out the shattered end of the bone and inserting an Avanta prosthetic device as a replacement for the head of the radius, and cementing the device in place.

On March 2, 2006, the Beswicks filed their proposed medical malpractice action. The Beswicks alleged that Dr. Bell and Floyd Memorial had "failed to comply with the standard of care in the performance of [Beswick's] surgery," and that "[a]s a direct and proximate result of" their "fail[ure] to comply with the standards of care applicable to hospitals and physicians providing care in Floyd County," Beswick had required additional surgery and medical treatment and suffered permanent impairment, for which the Beswicks were entitled to compensation for "losses and damages." (App.171).

On April 21, 2009, the Medical Review Panel issued an opinion, stating its "unanimous decision" that the evidence did "not support the conclusion" that Floyd Memorial "failed to meet the applicable standard of care as charged in [the Beswicks'] complaint." (App.48).[1] On September 21, 2009, Floyd Memorial filed a motion for summary judgment, asserting that inasmuch as the Beswicks had "offered no expert affidavit or testimony on the issue of liability," it was "entitled to summary judgment as a matter of law." *Id.* at 39. On November 12, 2009, Dr. Bell filed his motion for summary judgment.

After an extension of the deadline for a response, on January 4, 2010 the Beswicks filed their memorandum and brief in opposition to Floyd Memorial's motion for summary judgment. The Beswicks designated and included therewith two affidavits from Dr. Roback, an orthopedic surgeon. The first Roback affidavit, dated December 13, 2009, opined that "Dr. [ ] Bell failed to comply with the applicable standard of care in several respects," including his failure "to determine the correct size of the radial head prosthesis," and his failure "to establish the correct alignment" of the prosthesis in the treatment of Beswick. *Id.* at 70, 71.[2]

The second Roback affidavit, dated December 29, 2009, opined that Floyd Memorial had breached the standard of care. According to Dr. Roback, Floyd Memorial

> failed to comply with the applicable standard of practice in several respects, including the following:

1. A motion several months later by Floyd Memorial states that "[t]he medical review panel also issued a unanimous opinion ... in favor of Dr. Bell on that date." (App.174).

2. The summary judgment brief states that this first affidavit was "submitted in response to the summary judgment motion of" Dr. Bell. (App.50). Subsequently, on March 17, 2010, Dr. Bell withdrew his motion for summary judgment.

(1) Failure by the staff at Floyd Memorial ... to insure that Dr. [ ] Bell established the correct alignment of the radial head prosthesis by using the required guide [produced by the manufacturer] ...;

(2) Failure by ... Floyd Memorial ... to have formally approved the use [of the Avanta prosthetic] system through an established policy under the appropriate surgical and medical committee review boards ...; [and]

(3) Failure by ... Floyd Memorial ... to have an established policy of training of the operating room personnel to insure that the complete set of components [of the prosthetic device system] was available including all sizes and all the ancillary guides....

*Id.* at 157.

Also designated and submitted with the Beswicks' opposition to Floyd Memorial's motion for summary judgment were discovery responses from Dr. Bell and Floyd Memorial. Dr. Bell's response stated that he had not been specifically trained in the use of the prosthetic device system but had "used" it on several occasions before Beswick's procedure. (App.116). Floyd Memorial stated that it had "no process or procedure in place ... to approve the use of each particular medical device that may be utilized by physicians" at the hospital, such being "the responsibility of each independent contractor physician"; that the Avanta prosthetic device had been used at Floyd Memorial on one occasion prior to Beswick's surgery; and that Floyd Memorial had no documents as to Floyd Memorial protocols, policies or procedure in place for use of the Avanta prosthetic device, nor any documents as to a Floyd Memorial procedure for approval of the use of surgically-implanted devices. (App. 130)

On March 18, 2010, Floyd Memorial submitted its motion to strike Dr. Roback's second affidavit, arguing that the affidavit "misstate[d] the duty that is owed by hospitals under Indiana law, and it further invades the province of the Court by providing improper legal conclusions." *Id.* at 174.

On April 29, 2010, the trial court heard the parties' arguments on both Floyd Memorial's motion to strike and its motion for summary judgment. The Beswicks asserted that Floyd Memorial had "an affirmative duty to make sure that ... Dr. Bell had sufficient experience" with "this particular device and this procedure ... before allowing him to use their facility to insert this device." (Tr. 13). They cited to Dr. Roback's opinion that Floyd Memorial "had a duty to its patients to make sure that [independent contractor physicians with hospital privileges] have sufficient experience," which is "part of what credentialing is." *Id.* at 14. As "a separate theory," they asserted that Floyd Memorial "had a duty to maintain standards of acceptable medical practices within the individual decision making responsibility of each doctor." *Id.* at 15. They further asserted that Floyd Memorial had "a separate duty to be certain that equipment used by a surgeon has been submitted for approval and actually approved by the hospital," citing to Dr. Roback's opinion "that the hospital had a duty to have uniform and formalized policies and treatment protocol which included regulating what equipment may be used, and which personnel are allowed to use such equipment, and what manner." *Id.* at 15–16, 16. Finally, the Beswicks asserted to the trial court that "the hospital has a duty to make sure that equipment such as this artificial head of the radius is used consistently with the manufacturer's specification." *Id.* They concluded by asserting that the prosthetic "device was used improperly," and

the hospital was in a position to have prevented the wrong use of this device if they simply had had their approval process, have somebody submit this device, have the doctors there that are on the committee that decides about such things to decide if it's safe and effective for their patients, and what experience of the doctors is required before they are allowed to use it.

*Id.* at 17.

On May 7, 2010, the trial court issued its order striking the affidavit of Dr. Roback "pertaining to Floyd Memorial...." (App. 212). Also on May 7, 2010, the trial court ordered that Floyd Memorial's motion for summary judgment be granted, finding "no genuine issue as to any material fact." (App.9).

## DECISION

The Beswicks's claim is one for medical malpractice. Therefore, they must show that Floyd Memorial owed them "a duty of care at the time the injury occurred, that the defendant's behavior did not conform to that standard of care, and that [their] injuries were proximately caused by the breach." *McSwane v. Bloomington Hosp. and Healthcare System,* 916 N.E.2d 906, 910 (Ind.2009).

■ Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* at 909. The burden is on the moving party to prove the nonexistence of a genuine issue of material fact; once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing that there is a genuine issue for trial. *Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind. 1992).

In support of its motion for summary judgment, Floyd Memorial submitted the opinion of the medical review panel. This was sufficient to satisfy its burden of showing no genuine issue of material fact, because without a breach of the standard of care, Floyd Memorial would be entitled to judgment as a matter of law. *Id.* At that point, the burden shifted to the Beswicks "to respond by presenting specific facts which showed a genuine issue for trial." *Id.* They attempted to do this by presenting the second affidavit of Dr. Roback.

### 1. *The Affidavit*

The Beswicks argue that the trial court erred when it struck Dr. Roback's affidavit as to the standard of care for Floyd Memorial. They cite to *Jordan v. Deery,* 609 N.E.2d 1104, 1111 (Ind.1993), for the proposition that where the affidavit "establishes an expert's credentials as a medical expert, states that the expert has reviewed the pertinent medical records, and sets forth the conclusion that the defendants failed to comply with the appropriate standard of care in their treatment thereby causing the complained injury," that affidavit is "sufficient to demonstrate the existence of a material fact, thus making summary judgment inappropriate." Beswicks' Br. at 20. However, in *Jordan,* the affiant physician opined that the defendant medical providers "violated the standard of care in their treatment of the child and that such treatment caused the complained-of injuries." *Id.* Here, Dr. Roback's affidavit as to Floyd Memorial did not state that any "treatment" of Beswick *by the hospital* had "caused" his "complained-of injuries." *Id.*

■ The Beswicks further cite to *Oelling,* 593 N.E.2d 189, and argue that the second Roback affidavit met its requirements as to expert testimony. *Oelling* held that in order to "raise a material issue of fact as to whether" the medical provid-

ers' conduct fell below the standard of care, the medical expert physician's affidavit must "set out the applicable standard of care and a statement that the treatment in question fell below that standard." *Id.* at 191. Specifically, *Oelling* held that the "standard" is as follows:

a *physician* must exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances.

*Id.* Here, in the affidavit at issue, Dr. Roback had opined as to the standard of care for a *hospital,* not another physician. Hence, neither *Jordan* nor *Oelling* are directly on point. When appealing from the grant of summary judgment, the appellant "has the burden to persuade the appellate tribunal that the trial court's decision was erroneous." *Oelling* at 190. The Beswicks' arguments have not persuaded us that the trial court erred in striking the affidavit. Nevertheless, we address whether the affidavit established a genuine issue of material fact that precluded summary judgment.

2. *Summary Judgment*

In *Sword v. NKC Hospitals, Inc.,* 714 N.E.2d 142, 147 (Ind.1999), the issue was "whether, under Indiana law, [the hospital] can be held liable for the alleged negligence of an independent contractor anaesthesiologist." Our Supreme Court noted that "[i]n the hospital setting, Indiana courts have long followed the general rule that hospitals could not be held liable for the negligent actions of independent contractor physicians," and that "[i]f the alleged negligence was committed by an independent contractor physician, the courts have generally held that the hospital cannot be held liable for those actions." *Id.* at 149, 150.

It is undisputed that Dr. Bell was an independent contractor physician. Thus, under Indiana law, Dr. Roback's opinion that the failure of Floyd Memorial "to insure that Dr. [ ] Bell established the correct alignment of the ... prosthesis by using the required guide produced" by the device's manufacturer did not create a material issue of fact as to alleged negligence by Floyd Memorial. (App.157).

Dr. Roback opined that Floyd Memorial had a duty "to insure the safety and well being of each patient by maintaining the accepted standard of practice within the individual decision making responsibility of each doctor." (App.155). However, to the contrary, and as a matter of Indiana law, a surgeon is charged with the non-delegable duty of performing a surgical procedure in accordance with the standard of care. *Funk v. Bonham,* 204 Ind. 170, 183 N.E. 312, 316 (1932). Moreover, in *Yaney by Yaney v. McCray Memorial Hosp.,* 496 N.E.2d 135, 137 (Ind.Ct.App. 1986), the appellant plaintiffs argued "that the hospital had a separate and independent duty to ensure that the care Dr. Wilson provided did not fall below acceptable medical standards." We noted the long-standing "rule in Indiana ... that a hospital is generally not liable for the medical negligence of the doctors on its staff, since by law doctors are considered to be independent contractors." *Id.* (citing *Iterman v. Baker,* 214 Ind. 308, 15 N.E.2d 365 (1938)). Thus, we find that Dr. Roback's affidavit did not create a material issue of fact with respect to the hospital's standard of care.

Dr. Roback also opined that the hospital failed to comply with the standard of care when it "fail[ed] ... to have formally approved the use" of the prosthetic device "system through an established policy under the appropriate surgical and medical committee review boards." (App.

157). Dr. Bell's credentials as a licensed, board-certified orthopedic surgeon are undisputed. The affidavit contains no evidentiary basis supporting the need for a hospital to be held duty-bound to formally approve the use of any prosthetic device before its utilization by a physician to whom it has granted practice privileges. Nor do the Beswicks cite to any authority to support Dr. Roback's assertion of a "duty" on the part of a hospital "to insure the safety and well being of each patient by maintaining the accepted standard of practice within the individual decision making responsibility of each doctor." (App.155). Their proposition is not in accordance with Indiana law, which holds that the surgeon's duty is non-delegable, such that the hospital is generally not liable for alleged negligence committed by an independent contractor physician. *See Funk*, 183 N.E. at 316.

■ The Beswicks argue that various provisions of the Indiana Administrative Code as to the governing board of a hospital and its medical staff combine to "make abundantly clear" that Dr. Bell cannot be relied upon "to decide what surgical procedures he wants to do." Beswicks' Br. at 24. We are not persuaded. The cited provisions state in broad terms the responsibilities of a hospital's governing board with respect to its management, operation, and control of the hospital, as well as the appointment, reappointment, and assignment of privileges to members of its medical staff. *See* Ind.Code §§ 16–21–2–5, and –7; IAC §§ 15–1.4–1, 1.5–5, and 1.6–8. However, we do not read these provisions to impose upon the hospital the requirement that it engage in the detailed micromanagement of medical care being provided by individual independent physicians as contemplated by Dr. Roback's affidavit and as argued for by the Beswicks.

■ Finally, Dr. Roback's opinion was that the failure by Floyd Memorial to have an established policy of training of the operating room personnel to insure that the complete set of components of the [prosthetic device] system was available including all the sizes and all the ancillary guides and equipment including the placement guide for the drilling of the neck component as identified in the company instruction manual constituted a failure "to comply with the applicable standard of practice." (App. 157). As the Beswicks note, in his submission to the medical review panel, Dr. Bell asserted that "he does use trial sizes and the alignment guides provided" by the manufacturer, but simply does not record these facts in his operative notes. Beswicks' Br. at 6. Moreover, as asserted by Floyd Memorial, "[t]here are absolutely no facts to indicate that all of the device components were not available" to Dr. Bell. Floyd Memorial's Br. at 15. Inasmuch as Indiana law holds that it is the surgeon's non-delegable duty to not perform a surgery negligently, we cannot find that Dr. Roback's opinion in this regard creates a genuine issue of material fact.

■ As presented in the trial court, the Beswicks also argue that their action includes the theory of negligent credentialing. In *Winona Memorial Hosp., LP v. Kuester*, 737 N.E.2d 824, 828 (Ind.Ct.App. 2000), we acknowledged that a plaintiff could pursue such an action. Although the elements thereof have not been defined in Indiana law, we did note in *Yaney* that an "exception, of sorts, exists" to the rule that "a hospital is generally not liable for the medical negligence of the doctors on its staff." 496 N.E.2d at 137. This "exception" is "when the hospital is aware that the care a doctor is providing has deviated from normal practice." *Id.*

In *Schelling v. Humphrey*, 123 Ohio St.3d 387, 916 N.E.2d 1029, 1033 (Ohio 2009), the Ohio Supreme Court held that

[t]o prove a negligent-credentialing claim, a plaintiff injured by the negligence of a staff doctor must show that but for the lack of care in the selection or retention of the doctor, the doctor would not have been granted staff privileges, and the plaintiff would not have been injured.

Thus, Ohio law contemplates some knowledge on the part of the hospital that would render its credentialing decision negligent.

In *Frigo v. Silver Cross Hosp. and Med. Ctr.*, 377 Ill.App.3d 43, 315 Ill.Dec. 385, 876 N.E.2d 697, 721 (Ill.App.2007), our sister Illinois Appellate Court reviewed "extensive authority from other state and federal courts addressing" the issue of negligent credentialing, including the annotation *Tort Claim for Negligent Credentialing of Physician*, 98 A.L.R.5th 533, 2002 WL 724243 (2002). It concluded that "the elements needed to prove negligent credentialing" were as follows: that "the hospital failed to meet the standard of reasonable care in the selection of the physician it granted medical state privileges to whose treatment provided the basis for the underlying malpractice claim"; and that "while practicing pursuant to negligently granted medical staff privileges, the physician breached the applicable standard of care"; and that "the negligent granting of medical staff privileges was the proximate cause of the plaintiff's injuries." *Frigo*, 315 Ill.Dec. 385, 876 N.E.2d at 723. With respect to the first element, "whether Silver Cross exercised reasonable care in granting privileges to Dr. Kirchner," it noted that it was "a breach of the hospital's duty of care to its patients to permit a physician whom the hospital knows or should have known is unqualified, or negligent, to practice on its premises." *Id.*, 315 Ill.Dec. 385, 876 N.E.2d at 724. The court reviewed evidence indicating that the doctor lacked required post-graduate surgical training and lacked certification by one practice-specific board or approval by another practice-specific board, as well as expert testimony that Dr. Kirchner "did not meet the minimum requirements" and "should not have been considered" for credentialing by Silver Cross, without which "Dr. Kirchner could not have performed surgery" there. *Id.*, 315 Ill.Dec. 385, 876 N.E.2d at 725. Thus, Illinois considered evidence showing the hospital's available foreknowledge, in its exercise of care, predating the plaintiff's injury.

Here, the evidence presented established that Dr. Bell held the appropriate state medical license and board certification as an orthopedic surgeon. There was no evidence of previous complaints or allegations by patients of medical negligence against Dr. Bell. Thus, the Beswicks presented no evidence that Floyd Memorial was "aware that the care" that he was "providing ha[d] deviated from the normal practice," *Yaney*, 496 N.E.2d at 137; or that "but for the lack of care in the selection or retention of" Dr. Bell, he "would not have been granted staff privileges," *Schelling*, 916 N.E.2d at 1033; or an expert's opinion that he "should not have been" granted staff privileges. *Frigo*, 315 Ill.Dec. 385, 876 N.E.2d at 725.

After the opinion of the medical review panel had entitled Floyd Memorial to judgment as a matter of law, the Beswicks did not produce evidence that established a genuine issue of material fact. Therefore, the trial court did not err when it granted Floyd Memorial's motion for summary judgment.

Affirmed.

BRADFORD, J., and BROWN, J., Concur.