Ivelisse **MARTINEZ**, Appellant–Plaintiff,

v.

**Jung I. PARK, M.D., and St. Margaret Mercy Healthcare Centers, Inc.,** Appellees–Defendants.

No. 45A05–1012–CT–799.

Court of Appeals of Indiana.

Dec. 7, 2011.

Tim Kelly, Beth Brown, Kelly Law Offices, Crown Point, IN, Attorneys for Appellant.

Gregory A. Crisman, Kirk D. Bagrowski, Eichhorn & Eichhorn, LLP, Hammond, IN, Attorneys for Appellee, Jung I. Park, M.D.

Libby Y. Goodknight, Krieg DeVault LLP, Indianapolis, Indiana, Julie A. Rosenwinkel, Nicholas K. Lagina, Krieg DeVault LLP, Schererville, Indiana, Attorneys for Appellee, St. Margaret Marcy Healthcare Centers, Inc.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issues

Dr. Jung Park performed bilateral breast reduction surgery on Ivelisse Martinez at St. Margaret Mercy Healthcare Center (the "Healthcare Center") in 2000. Martinez thereafter filed a medical malpractice action against both Dr. Park and the Healthcare Center, asserting claims for negligence and fraud. Dr. Park and the Healthcare Center each filed motions for summary judgment. The trial court ultimately granted partial summary judgment to Dr. Park and the Healthcare Center on Martinez's negligence claims. Martinez appeals the trial court's decision, raising two issues for our review: 1) whether the trial court erred in granting summary judgment to Dr. Park on her claim for medical negligence; and 2) whether the trial court erred in granting summary judgment to the Healthcare Center on her claim for negligent credentialing. Concluding the trial court properly granted summary judgment to both Dr. Park and the Healthcare Center, we affirm.

### Facts and Procedural History

Dr. Park is a physician practicing medicine in Indiana. Dr. Park is a board certified otolaryngologist and a cosmetic surgeon. He joined the Healthcare Center's medical staff in the 1980s and was granted privileges to perform, among other things, breast reduction surgery at the Healthcare Center. Martinez became acquainted with Dr. Park because he was her daughter's ear, nose, and throat doctor. She began to discuss the possibility of breast reduction surgery with Dr. Park in May 2000, and Dr. Park performed a bilateral breast reduction surgery on Martinez at the Healthcare Center in August 2000.

Unhappy with the results, Martinez filed a proposed complaint against Dr. Park and the Healthcare Center with the Indiana Department of Insurance. The medical review panel unanimously found Dr. Park

> failed to comply with the appropriate standard of care as charged in the complaint as it relates to the lack of appropriate recognized post-graduate training and residency in plastic and reconstructive surgery. The conduct complained of was a factor of the resultant damages.

[Appellant's] Appendix at 52. The review panel also unanimously found the Healthcare Center

> failed to comply with the appropriate standard of care as charged in the complaint by granting hospital privileges to a physician who lacked appropriate recognized post-graduate training and residency in plastic and reconstructive surgery. The conduct complained of was a factor of the resultant damages.

*Id.*

Following the panel decision, Martinez filed her medical malpractice complaint against Dr. Park and the Healthcare Center in the trial court in August 2006. The complaint alleged in Count I that Dr. Park negligently breached the applicable standard of care in performing her surgery; in Count II that the Healthcare Center negligently breached the applicable standard of care by granting privileges to Dr. Park; and in Count III that Dr. Park and the

Healthcare Center made fraudulent misrepresentations as to Dr. Park's credentials. The procedural history of this cause thereafter is, to put it mildly, convoluted.[1] Two concurrent and ultimately intertwined courses of pleadings ensued, one regarding discovery and one regarding summary judgment. For the sake of clarity, we describe the two separately.

Expert Testimony Discovery Dispute [2]

In April 2007, Dr. Park served discovery requests on Martinez. Interrogatory eight asked Martinez to identify the experts she expected to call to testify at trial. Interrogatory nine asked her to state, with respect to each expert identified in interrogatory eight, "the specific subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; and a summary of the grounds for each opinion." *Id.* at 243. In response to interrogatory eight, Martinez identified the three plastic surgeons who had served on the medical review panel: Dr. Bruce Van Natta, Dr. Brian Lee, and Dr. Michael Sadove. In response to interrogatory nine, Martinez disclosed "[t]he experts will testify regarding the diagnosis, prognosis, permanency, impairment, the effect on [Martinez's] life. In addition, they will testify to the defendant's acts of malpractice. They will testify as to the importance and meaning of board certification and the process by which a physician becomes board certified." *Id.*

In a letter to Martinez's counsel, Dr. Park asserted Martinez's answer to interrogatory nine "provides only the subject matter on which these experts are expect-

ed to testify." Appendix of Appellee Park at 36. Dr. Park then requested Martinez supplement her response to interrogatory nine to

disclose the specific facts and opinions [Martinez's experts] will testify to in regards to the "diagnosis, prognosis, permanency, impairment, the effect on [Martinez's] life" [and] state the experts' specific opinions regarding Dr. Park's acts of malpractice, and specify what the experts will testify to regarding the "importance and meaning" of board certification, and the process by which a physician becomes board certified.

*Id.* at 36–37. Martinez replied that her answers were "full and complete" and invited Dr. Park to conduct depositions of her experts if he desired additional information. *Id.* at 38. She also stated that "in addition to those areas previously identified, the experts will testify regarding the privileges granted by [the Healthcare Center] to Dr. Park, and the difference between cosmetic and plastic surgery." *Id.* On October 3, 2007, after these efforts to informally resolve the discovery dispute failed, Dr. Park filed a motion to compel Martinez "to provide full, complete, nonevasive answers to interrogatory number nine." *Id.* at 5. On December 11, 2007, the trial court issued the following order granting Dr. Park's motion to compel:

... The Court finds that [Martinez's] response is not adequate, and that it does not disclose the expert's opinion or the substance and grounds of the expert's opinion. Rather, [Martinez] only discloses generally the subject matter of

1. As one of the trial court's orders in this cause states, "[t]he circumstances that have unfolded in this case are extraordinary." *Id.* at 39.

2. Although none of the discovery orders discussed herein are part of this appeal, we include this history as it concerns the evidence which was properly designated to the trial court in its consideration of the summary judgment motions, and hence, describes the evidence we may consider on review.

the opinion. That the defendant may later seek to depose [Martinez's] expert witness, does not relieve [Martinez] of the obligation to fully respond to the expert interrogatory.

*Id.* at 81. The trial court therefore ordered Martinez to amend her answer to interrogatory nine to specify the substance of the facts and opinions of her experts' expected testimony and the grounds for each opinion within thirty days. "Failing compliance with this Order, [Martinez's] expert will not be allowed to offer any opinions which are not specifically provided in response to the interrogatories." *Id.* at 82.

On January 18, 2008, Dr. Park filed a motion to enforce the trial court's order alleging Martinez had, to that date, failed to provide amended interrogatory answers and requesting the trial court "bar the undisclosed, standard of care opinion testimony" of Martinez's experts. *Id.* at 86. Later that same day, Martinez filed a response to the motion to enforce and served Dr. Park by fax an amended answer to interrogatory nine, dated December 28, 2007, and an affidavit of Dr. Van Natta, dated December 21, 2007 ("First Affidavit"). Paragraph 3 of Dr. Van Natta's First Affidavit stated:

> Based upon my review of the medical evidence submitted to me, including the panel submission of [Martinez], [Dr. Park], and [the Healthcare Center], with exhibits, it is my expert opinion, within a reasonable degree of medical certainty, and based upon my training, experience, and education that [Dr. Park] breached the appropriate standard of care in performing a breast reduction surgery on [Martinez].

[Appellant's] App. at 286–87. Martinez's response to the motion to enforce alleged the failure to timely serve the discovery information "was unintentional and due to

a clerical and computer error." App. of Appellee at 98. She also alleged the First Affidavit was part of the evidence designated in her response to motions for summary judgment that had been previously filed on January 2, 2008. Dr. Park filed a reply in which he asserted the amended discovery responses "are no different than [Martinez's] first set of discovery responses" because they "make overbroad statements regarding the subject matter of the expected testimony" and therefore still failed to set forth the substance of her experts' opinions. *Id.* at 102.

A hearing regarding Dr. Park's motion to enforce was held on February 14, 2008. At that hearing, the trial court asked Martinez's counsel:

> THE COURT: What is [Dr. Van Natta's] opinion that [Dr. Park] did wrong during the surgery? Because I sure don't know what it is yet after having read [Dr. Van Natta's First A]ffidavit and these [interrogatory] answers.
>
> [MARTINEZ'S COUNSEL]: He hasn't indicated to me that Dr. Park did anything wrong during the surgery. * * *
>
> THE COURT: Let me go back again, because here's how you survive summary judgment. In Paragraph 3 of Van Natta's [First A]ffidavit, he says based upon his opinion and after reviewing the medical evidence, based on his training, that Dr. Park breached the standard of care in performing a breast reduction surgery on Ivelisse Martinez. And now you're telling me he's never told you that there was anything wrong with the surgery?
>
> [MARTINEZ'S COUNSEL]: He has never told me personally.
>
> THE COURT: Well, what did he mean in that paragraph of the affidavit then? Because that's how you got past

the summary judgment motions.... That paragraph is what did it....

*Id.* at 183–84. The same day, the trial court issued the following order, in pertinent part:

Dr. Park has asked this Court to enforce its order regarding expert witnesses' opinions. The Court explicitly provided that expert witnesses whose opinions were not disclosed pursuant to Trial Rule 26 and the Court's explicit Order of December 11, 2007, would not be permitted to offer such opinion testimony at trial.

The Court need not reiterate the terms of Trial Rule 26 or its December 11th Order. Expert witnesses' opinions which have not been disclosed will not be permitted to be used at trial. General descriptions of the subject matter of expert testimony or the areas of testimony are not adequate. Specific opinions must have been identified pursuant to answers to interrogatories and/or the prior Order of this Court. The Court shall enforce this Order at the time of trial.

*Id.* at 124–25.

### Defendants' Motions for Summary Judgment

On October 3, 2007, Dr. Park filed two motions for partial summary judgment. Dr. Park's first motion alleged he was entitled to partial summary judgment on Count I of Martinez's complaint "on the grounds that [Martinez's] allegations of medical malpractice regarding the care rendered to [Martinez] by Dr. Park are unsupported by expert medical opinion, without which [Martinez's] claim must fail...." [Appellant's] App. at 65.[3] Also on October 3, 2007, the Healthcare Center filed a motion for summary judgment on both Count II and Count III of Martinez's complaint. Both Dr. Park and the Healthcare Center designated as evidence in support of this motion Martinez's complaint, the medical review panel decision, and an affidavit by Dr. Michael Rosenberg.[4]

On January 2, 2008, Martinez filed responses to Dr. Park's motion for partial summary judgment as to Count I and to the Healthcare Center's motion for summary judgment. She designated in support of her responses Dr. Van Natta's First Affidavit, which was also later submitted in response to Dr. Park's motion to enforce the trial court's order on his motion to compel, as described above. A hearing on the motions for summary judgment was held on January 23, 2008, and the trial court issued the following order on February 13, 2008—notably, the day *before* the discovery hearing and order on the motion to compel—as to the medical negligence claims:

**[Dr. Park's] Motion for Summary Judgment on Breach of the Standard**

---

3. Dr. Park's second motion alleged he was entitled to summary judgment "in his favor as to Count III of [Martinez's] complaint (alleging claims of fraudulent misrepresentation and seeking actual and treble damages) on the grounds that [Martinez's] sworn deposition testimony negates the requisite elements of a claim for fraud, without which [Martinez's] claim must fail...." *Id.* at 91. In the second summary judgment proceedings described below, this motion was granted as to the actual fraud claim and denied as to the constructive fraud claim. Martinez does not appeal the trial court's partial grant of summary judgment to Dr. Park on this count.

4. Curiously, Dr. Park's Motion for Partial Summary Judgment as included in Martinez's Appendix does not include Dr. Park's pleading titled "Designation of Evidence," nor does it include Dr. Rosenberg's affidavit, identified as Exhibit C, although it does include Exhibits A and B. *Compare* [Appellant's] App. at 66–90 *with* Appellee's App. at 40–68.

### of Care and Informed Consent

Dr. Park also filed a motion for summary judgment, arguing that there is no issue of material fact and that [Martinez] has failed to demonstrate that Dr. Park's surgery and treatment of [Martinez] breached the standard of care and caused [Martinez] injury, or that he failed to obtain informed consent. . . .

The Court now finds that [Martinez] has produced sufficient evidence, by virtue of the panel opinions and Dr. Van Natta's [First A]ffidavit, to create a material fact as to the breach of the standard of care and informed consent issues. Summary judgment is therefore not appropriate.

IT IS NOW THEREFORE ORDERED that the motion for summary judgment filed by [Dr. Park] directed to [Martinez's] claims for medical negligence regarding Dr. Park's surgery and treatment, or the obtaining of informed consent, is hereby DENIED.

### Motion for Summary Judgment by [the Healthcare Center]

#### A. [Martinez's] Negligent Credentialing Claim

[The Healthcare Center] argues that it is entitled to summary judgment because [Martinez] has failed to present expert testimony to establish a question of fact concerning a breach of the standard of care. In response, [Martinez] again relies upon the [First A]ffidavit of [Dr. Van Natta], which affidavit includes the opinion that [the Healthcare Center] deviated from the applicable standard of care in granting Dr. Park the surgical privileges he enjoyed. Further, the unanimous panel opinion in this case found that [the Healthcare Center] failed to comply with the appropriate standard of care and that the complained of conduct *was* a factor in the resultant damages.

[Martinez] has presented sufficient evidence to demonstrate that an issue of fact exists regarding its negligent credentialing claim made against [the Healthcare Center].

* * *

IT IS NOW THEREFORE ORDERED that the motion for summary judgment filed by [the Healthcare Center] is DENIED.

[Appellant's] App. at 36–38 (emphasis in original). A jury trial on the remaining issues [5] was scheduled to begin March 10, 2008.

After the February 14, 2008 discovery hearing and resultant order mentioned in the section above, both Dr. Park and the Healthcare Center filed motions to reconsider the February 13, 2008, summary judgment order. Martinez responded to the motions to reconsider and attached to her response a more extensive affidavit by Dr. Van Natta, dated March 14, 2008 ("Second Affidavit"). Dr. Park and the Healthcare Center each filed motions to strike the Second Affidavit as untimely. The trial court issued the following order with regard to the motions to reconsider on March 20, 2008:

. . . [Martinez] was requested to provide expert witness's [sic] opinions through Defendants' discovery requests months ago. On December 11, 2007, the Court ordered [Martinez] to provide those opinions within thirty days. [Mar-

---

**5.** Following the February 13, 2008, summary judgment order, the remaining claims were Martinez's claims against Dr. Park for constructive fraud and medical negligence, and all of her claims against the Healthcare Center (negligent credentialing, actual fraud, and constructive fraud).

tinez] did not do so. The Court ruled on the Defendants' summary judgment motions on the basis of its interpretation of Dr. Van Natta's first affidavit, which had been filed by [Martinez] with her response to the defense summary judgment motions. Trial was at that time scheduled to begin on March 10, 2008. Because of the facts which became apparent after the summary judgment hearing ..., the Court continued the jury trial, and there is now hopefully time to bring order to all the issues that Counsel have raised.

Under the extraordinary circumstances of this case, the Court now finds that the Order on the motions for summary judgment should be vacated and that Counsel should be given an opportunity to make supplemental arguments regarding their respective positions to include those facts that have been made to appear since the hearing on the motions for summary judgment.

IT IS NOW THEREFORE ORDERED as follows:

1. The partial summary judgment entered on February 13, 2008 in favor of [Dr. Park] and denying the motion for summary judgment filed by [the Healthcare Center] is hereby VACATED.

[Appellant's] App. at 39–40. The motions to strike were not specifically addressed by this order, but the trial court did set a schedule for the parties to file supplemental designations of fact and supplemental memoranda if they wished.

Martinez then filed responses to the motions to strike, alleging that pursuant to the trial court's March 20, 2008, order, she "has been granted leave to supplement [her] discovery and evidentiary materials" and the motions to strike are therefore moot and the Second Affidavit should be considered during the additional summary judgment proceedings. *Id.* at 694, 697.

In her response to the Healthcare Center's supplemental memorandum of law in support of summary judgment, she also asserted that "[u]nfortunately, by providing such a detailed [Second A]ffidavit, [Martinez's] trial strategy has been disclosed to the defendant and will give the defendant an unfair opportunity to develop a game plan specifically designed to address [Martinez's] arguments." Appellant's App. at 854. Following a hearing, the trial court issued the following order on December 3, 2008, regarding the motions to strike:

This case is before the Court on the motions to strike filed by both defendants. The motions are directed toward the supplemental/new affidavit of Dr. Van Natta filed by [Martinez] on March 14, 2008.... For the reasons stated below, the Court finds that the motions to strike should be granted.

The Court set discovery and dispositive motion deadlines in this case after conference with counsel. The deadlines established by the Court were meant to have meaning and were not merely an exercise in administration. It is by the use of those deadlines that the Court attempts to control the time it takes to reasonably conclude litigation on the Court's docket.

In this case after the deadlines were established and with a trial date pending, the Court, upon motion of [Dr. Park], ordered [Martinez] to supplement her answers to interrogatories to provide specific information about the opinions of [Martinez's] expert, Dr. Van Natta. [Martinez] was given thirty days to supplement her answers and was warned that if she failed to do so any opinions of Dr. Van Natta which were not disclosed could not be introduced as evidence at trial.

[Martinez] did not supplement her answers to interrogatories within thirty

days, and when she did serve supplemental answers on or about January 18, 2008, [Martinez] still did not provide the substance of her expert's opinions or the grounds for each of the opinions. On Dr. Park's motion, the Court ruled that it would enforce the earlier order and would not allow introduction of undisclosed expert opinion at trial.

After the Court entered partial summary judgment and denied the remainder of the Defendants' requests for summary judgment, the Defendants on the eve of trial filed motions to reconsider.... Given the issues raised by those motions and [Martinez's] counsel's comments, the Court continued the jury trial and vacated the orders on the motions for summary judgment to allow more time for reasoned consideration of the parties' respective positions. Counsel were granted time to file supplemental factual designations and briefs on the pending motions for summary judgment. The Court did not then vacate or modify its earlier orders regarding expert opinion disclosure and testimony.

In her supplemental designation filed May 22, 2008 [Martinez] presented a new affidavit of her expert, Dr. Van Natta, which detailed in many paragraphs the opinions and the bases for the opinions held by the expert regarding Dr. Park's and the [Healthcare Center's] breaches of the standards of care applicable to this case. This information was precisely what [Martinez] was required to provide in response to the Defendants' interrogatories, and in response to the Court's order of December 11, 2007. It is apparent that [Martinez] withheld the information about the expert's opinions as a matter of trial strategy and planned to reveal it for the first time at trial when she called Dr. Van Natta as a witness.

This type of conduct cannot be condoned or go undeterred if the Court is to maintain fairness to both sides in an orderly system of justice. No party should be permitted to develop a strategy that includes surprising the opponent at trial with previously withheld expert opinions. [Martinez] must understand that this Court must enforce its orders, or the orders of the Court will no longer have the respect of the bar and litigants. Absent some showing of an adequate reason for failure to comply with the rules of discovery and orders of the Court, violations of the trial rules and the Court's orders must have consequences. It is not enough for [Martinez] to now argue that since the trial has been continued, then all should be forgotten and [Martinez] can go to trial without any sanctions for her actions.

The Court has considered what alternate sanctions could be imposed against [Martinez] other than exclusion of the undisclosed opinion testimony. If [Martinez's] failure to disclose was mere oversight or neglect, it might mitigate the circumstances here. But [Martinez's] knowing violation of the rules of discovery and the Court's order cannot be permitted. Under the circumstances here lesser sanctions do not seem appropriate. Reopening discovery could require months of additional work and preparation and substantial additional costs to all parties.

The Court now therefore ORDERS that the opinions of Dr. Van Natta which were not disclosed within the deadline established by the Court's order of December 11, 2007 are not admissible in this case. Consequently, the second affidavit of Dr. Van Natta and [Martinez's] supplemental answers to interrogatories incorporating that affidavit shall not be considered by the Court in ruling on the pending motions for summary judgment,

nor shall Dr. Van Natta be permitted to testify to the opinions disclosed for the first time in that second affidavit.

Appellee's App. at 126–28 (footnotes omitted). Martinez's motion to reconsider this order was denied by order dated April 7, 2009.[6] Therefore, summary judgment proceeded based only on the evidence Martinez properly designated prior to the February 13, 2008, summary judgment hearing, excluding Dr. Van Natta's Second Affidavit.

A new hearing on the pending summary judgment motions was held on June 9, 2009, at the conclusion of which the trial court issued the following order:

### [Dr. Park's] Motion for Summary Judgment on Breach of the Standard of Care

[Dr. Park] also filed a motion for summary judgment, arguing that there is no issue of material fact and that [Martinez] has failed to demonstrate that Dr. Park's surgery and treatment of [Martinez] breached the standard of care and caused [Martinez] injury.

The Court now finds that [Martinez] has failed to produce evidence to create a material fact as to the breach of the standard of care. Summary judgment is therefore appropriate.

IT IS NOW THEREFORE ORDERED that the motion for summary judgment filed by [Dr. Park] directed to [Martinez's] claim for medical negligence regarding Dr. Park's surgery and treatment is hereby granted.

### Motion for Summary Judgment by [the Healthcare Center]

#### A. [Martinez's] Negligent Credentialing Claim

[The Healthcare Center] argues that it is entitled to summary judgment because [Martinez] has failed to present expert testimony to establish a question of fact concerning a breach of the standard of care.

[Martinez] has failed to present sufficient evidence to demonstrate that an issue of fact exists regarding breach of the standard of care and the negligent credentialing claim made against [the Healthcare Center]. Summary judgment in favor of [the Healthcare Center] is appropriate.

* * *

IT IS NOW THEREFORE ORDERED that the motion for summary judgment filed by [the Healthcare Center] is granted as to [Martinez's] claim for negligent credentialing.

[Appellant's] App. at 42–44.[7] Martinez now appeals this order.[8]

### Discussion and Decision

#### I. Summary Judgment Standard of Review

When reviewing the grant or denial of a summary judgment motion, we apply the

---

6. Martinez does not appeal the trial court's ruling on the motion to strike or her motion to reconsider that ruling.

7. The trial court also granted summary judgment to Dr. Park on Martinez's claim of actual fraud. Martinez does not appeal this decision.

8. A five-day jury trial was held in November 2010 on Martinez's remaining claims of constructive fraud against Dr. Park and actual and constructive fraud against the Healthcare Center. At the conclusion of Martinez's evidence, Dr. Park and the Healthcare Center filed motions for judgment on the evidence. The trial court granted the motions, withdrew the case from the jury, and entered judgment on the evidence in favor of Dr. Park and the Healthcare Center. Martinez does not appeal the trial court's ruling on the motions for judgment on the evidence, limiting her appeal to the trial court's grant of summary judgment regarding the negligence claims.

same standard as the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Workman v. O'Bryan*, 944 N.E.2d 61, 64 (Ind.Ct.App. 2011), *trans. denied.* All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Workman*, 944 N.E.2d at 65. To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *See Beswick v. Bell*, 940 N.E.2d 338, 342 (Ind.Ct. App.2010). Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Carey v. Indiana Physical Therapy, Inc.*, 926 N.E.2d 1126, 1128 (Ind.Ct.App.2010), *trans. denied.* On appeal, we consider only the evidence properly designated to the trial court. *Hamilton v. Ashton*, 846 N.E.2d 309, 313 (Ind.Ct.App.2006), *clarified on reh'g on other grounds*, 850 N.E.2d 466, 467, *trans. denied.*

## II. Medical Negligence Claim Against Dr. Park

The elements of a medical malpractice case are that: (1) the physician owed a duty to the plaintiff; (2) the physician breached the duty; and (3) the breach proximately caused the plaintiff's injuries. *Akey v. Parkview Hosp., Inc.*, 941 N.E.2d 540, 546 (Ind.Ct.App.2011), *trans. denied.* "It is well settled that in a medical negligence claim, the plaintiff must prove by expert testimony not only that the defendant was negligent, but also that the defendant's negligence proximately caused the plaintiff's injury." *Schaffer v. Roberts*, 650 N.E.2d 341, 342 (Ind.Ct.App.1995).

"Because of the complexity of medical diagnosis and treatment, substantive law requires expert opinion as to the existence and scope of the standard of care which is imposed upon medical specialists and as to whether particular acts or omissions measure up to the standard of care." *Ziobron v. Squires*, 907 N.E.2d 118, 122–23 (Ind.Ct. App.2008) (citation and quotation omitted).

In accordance with the requirements of the Indiana Medical Malpractice Act, Martinez submitted a proposed complaint to a medical review panel prior to commencing this action in the trial court. *See* Ind.Code § 34–18–8–4. After reviewing the evidence submitted by the parties, the medical review panel is to issue an expert opinion "as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint." Ind.Code § 34–18–10–22(a). The panel is to give one or more of the following expert opinions:

(1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.

(2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.

(3) There is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury.

(4) The conduct complained of was or was not a factor of the resultant damages....

Ind.Code § 34–18–10–22(b). The medical review panel's expert opinion "is admissible as evidence in any action subsequently brought by the claimant in a court of law. However, the expert opinion is not conclu-

sive, and either party, at the party's cost, has the right to call any member of the medical review panel as a witness. If called, a witness shall appear and testify." Ind.Code § 34–18–10–23.

In support of his motion for summary judgment, Dr. Park designated Martinez's complaint, which alleged that, "[i]n the course of attempting to perform [a bilateral breast reduction], Park breached the applicable standards of care. As a result of Park's negligent breach of the standard of care, [Martinez] sustained ... damages." [Appellant's] App. at 46. Dr. Park also designated the unanimous opinion of the review panel that he "failed to comply with the appropriate standard of care as charged in the complaint *as it relates to the lack of appropriate recognized post-graduate training and residency in plastic and reconstructive surgery*. The conduct complained of was a factor of the resultant damages." *Id.* at 52 (emphasis added).[9] Finally, Dr. Park designated the affidavit of Dr. Michael Rosenberg, a physician board certified in plastic surgery and cosmetic surgery. Dr. Rosenberg averred:

5. It is my opinion, within a reasonable degree of medical certainty, and based on my training and experience, that Dr. Park's care and treatment of [Martinez] conformed with the applicable standards of care.

6. Dr. Park's pre-operative assessments of [Martinez] were appropriate, and he obtained the proper consent to perform her breast reduction. The August 24, 2000 bilateral breast reduction was appropriately performed, and Dr.

Park's post-operative management of [Martinez] was appropriate. He employed an appropriate surgical technique for the breast reduction procedure, and properly addressed, with conservative management, the complications which developed after surgery. The patient's infection and fat necroses were recognized complications of surgery, which occurred despite the standard of care treatment rendered by Dr. Park.

Appellee's App. at 68. Dr. Park's motion for summary judgment alleged that the medical review panel opinion did not address, let alone prove, Martinez's allegation that his actual performance of the surgery breached the standard of care, and that his own expert's affidavit negates the breach and proximate cause elements of Martinez's claim.

In response, Martinez argued that the panel decision "clearly states Park breached the appropriate standard of care in that he was not qualified to do the surgery. By not being qualified to do the surgery, the Panel concluded he should never have performed the surgery." *Id.* at 205. Martinez designated Dr. Van Natta's First Affidavit, in which he averred:

3. Based upon my review of the medical evidence submitted to me, including the panel submission of [Martinez], [Dr. Park], and [the Healthcare Center], with exhibits, it is my expert opinion, within a reasonable degree of medical certainty, and based upon my training, experience, and education that [Dr. Park] breached the appropriate

9. This is an odd case in that the medical review panel did find a breach of the standard of care, but because of the limiting language, the physician rather than the patient has designated the panel opinion. Thus, this case is more akin to cases in which the panel opinion favors the physician and the patient is required to present sufficient expert medical testimony to negate the panel's opinion in order to survive summary judgment, *see Whyde v. Czarkowski,* 659 N.E.2d 625, 627 (Ind.Ct.App.1995), *trans. denied,* than cases in which the panel opinion favors the patient and any evidence designated by the physician to refute the panel opinion would only create an issue of fact.

standard of care in performing a breast reduction surgery on [Martinez].

4. Further, it is my expert opinion, within a reasonable degree of medical certainty, that the injuries and damages suffered by [Martinez] are as a result of [Dr. Park's] breaching the appropriate standard of care *by performing a procedure in which he lacked the necessary appropriate training, knowledge, and experience.*

5. [Dr. Park] failed to obtain the proper consent to perform the procedure by failing to disclose his lack of skill, expertise, knowledge, and experience in performing breast reduction surgery to [Martinez]. [Dr. Park] misrepresented his level of skill, expertise, and knowledge when he claimed to be board certified.

6. [Dr. Park] failed to obtain the appropriate recognized post-graduate training and residency in plastic and reconstructive surgery and this failure was a cause of [Martinez's] injuries.

7. It is my expert opinion that *but for the failure of [Dr. Park] to conform with the appropriate standard of care by performing the procedure while lacking the appropriate skills and training,* [Martinez] would likely not have suffered the injuries she has.

8. It is my expert opinion that *[Dr. Park] should never have been performing breast reduction surgeries due to his lack of knowledge, training, judgment, experience, and technical expertise.*

*Id.* at 286–87 (emphasis added).

 Martinez's argument on summary judgment, as on appeal, fails to recognize

that there is a distinction "between the *fact* of a surgery being performed and the *manner* in which the surgery is performed." *Hamilton v. Ashton,* 850 N.E.2d 466, 467 (Ind.Ct.App.2006) (opinion on reh'g) (emphasis in original). Martinez's complaint raises an issue with regard to the manner in which Dr. Park performed the surgery; Dr. Park's designated expert affidavit avers that he did not breach the standard of care in the manner in which he performed the surgery or provided pre- and post-operative care. The medical review panel opinion and Martinez's expert affidavit [10] address only the fact of the surgery; that is, given his training, knowledge, and expertise, *should* Dr. Park have performed the breast reduction surgery? Neither addresses the manner in which Dr. Park actually performed the surgery itself.

Martinez notes that

> [a]n affidavit that establishes an expert's credentials as a medical expert, states that the expert has reviewed the pertinent medical records, and sets forth the expert's conclusion that the defendants failed to comply with the appropriate standard of care in their treatment thereby causing the complained of injury, is sufficient to demonstrate the existence of a material fact, thus making summary judgment inappropriate.

*Mills v. Berrios,* 851 N.E.2d 1066, 1070 (Ind.Ct.App.2006) (citing *Jordan v. Deery,* 609 N.E.2d 1104, 1111 (Ind.1993)). We do not disagree with that statement of the law. However, Dr. Van Natta's affidavit

---

10. Martinez's references in her appellant's brief to Dr. Van Natta's Second Affidavit are not well-taken. For the reasons explained above, the trial court struck the Second Affidavit and did not consider it in ruling on the motions for summary judgment, and therefore, we also do not consider it on review.

*See Kroger Co. v. Plonski,* 930 N.E.2d 1, 6 (Ind.2010) (on review of a summary judgment decision, we "stand in the shoes of the trial court and consider only those materials properly designated and before the trial court...") (quotation and emphasis omitted).

sets forth his conclusion that Dr. Park failed to comply with the appropriate standard of care in his education and training, not his treatment of Martinez. Martinez failed to come forth with any evidence to rebut Dr. Park's expert opinion that his medical treatment of Martinez met the applicable standard of care. The trial court properly granted summary judgment to Dr. Park on Martinez's medical negligence claim.

### III. Negligent Credentialing Claim Against the Healthcare Center

In *Winona Mem'l Hosp., LP v. Kuester*, 737 N.E.2d 824, 828 (Ind.Ct.App.2000), this court acknowledged that a plaintiff could pursue an action for negligent credentialing when we held that such a claim is subject to the provisions of the Medical Malpractice Act. In so holding, we noted that in order for the plaintiff to prove her claim of negligent credentialing, she "must first establish that a negligent act of [the doctor] proximately caused her injury before she can proceed against the [hospital]." *Id.* A plaintiff has a basis for a claim of negligent credentialing only if the credentialing process "resulted in a definable act of medical malpractice that proximately caused injury" to the plaintiff. *Id.* In *Beswick*, we stated that the elements of a negligent credentialing claim had not, post-*Winona*, been further defined. 940 N.E.2d at 344. We looked, however, to language from an older Indiana case and to cases from sister states in determining whether the trial court properly granted summary judgment to a hospital on a negligent credentialing claim.

■ In *Yaney by Yaney v. McCray Mem'l Hosp.*, 496 N.E.2d 135, 137 (Ind.Ct. App.1986), this court noted the long-standing rule in Indiana that "a hospital is not generally liable for the medical negligence of the doctors on its staff, since by law doctors are considered to be independent contractors." *Yaney* also recognized an exception to that rule, however, that "when the hospital is aware that the care a doctor is providing has deviated from normal practice[,] ... the hospital must either question the doctor's orders or inform proper authorities." *Id. Beswick* also quoted the Ohio Supreme Court that to prove a negligent credentialing claim, "a plaintiff injured by the negligence of a staff doctor must show that but for the lack of care in the selection or retention of the doctor, the doctor would not have been granted staff privileges, and the plaintiff would not have been injured." 940 N.E.2d at 344–45 (quoting *Schelling v. Humphrey*, 123 Ohio St.3d 387, 916 N.E.2d 1029, 1033 (2009)). Finally, *Beswick* cited the Illinois Appellate Court's extensive review of authority from state and federal courts in concluding the following elements are needed to prove negligent credentialing:

> the hospital failed to meet the standard of reasonable care in the selection of the physician it granted medical state privileges to whose treatment provided the basis for the underlying malpractice claim; and that while practicing pursuant to negligently granted medical staff privileges, the physician breached the applicable standard of care; and that the negligent granting of medical staff privileges was the proximate cause of the plaintiff's injuries.

*Id.* at 345 (quoting *Frigo v. Silver Cross Hosp. & Med. Ctr.*, 377 Ill.App.3d 43, 315 Ill.Dec. 385, 876 N.E.2d 697, 721 (2007)). In short, to succeed on a negligent credentialing claim, the plaintiff must show that the physician to whom the hospital allegedly negligently extended privileges breached the applicable standard of care in treating the plaintiff and proximately caused her injuries.

■ We have held above that the trial court properly granted summary judgment to Dr. Park because Martinez failed to

rebut the expert testimony that he did not breach the applicable standard of care in pre-operatively, surgically, or post-operatively treating Martinez. Without a showing of an underlying breach of the standard of care by Dr. Park proximately causing Martinez's injuries, the Healthcare Center cannot be liable for the negligent credentialing of him. The trial court properly granted summary judgment to the Healthcare Center on Martinez's negligent credentialing claim.

### Conclusion

The trial court properly granted summary judgment to Dr. Park on Martinez's claim of medical negligence and properly granted summary judgment to the Healthcare Center on her claim of negligent credentialing. The judgment of the trial court with respect to these claims is therefore affirmed.

Affirmed.

BARNES, J., and BRADFORD, J., concur.